MATTER OF GARCIA-FLORES

In Deportation Proceedings

A-22315032

*Decided by Board February 27, 1980*

(1) Violation of a regulatory requirement by a Service officer can result in evidence being excluded or proceedings invalidated where the regulation in question serves a purpose of benefit to the alien and the violation prejudiced interests of the alien which were protected by the regulation.

(2) Where respondent alleged violation of the "warning" requirements set forth in 8 C.F.R. 287.3, record is remanded to clarify the regulatory requirements in this regard, and to provide the respondent the opportunity to demonstrate that the investigating officer's actions prejudiced her interests in a manner affecting the outcome of the deportation proceedings.

CHARGE:
Order: Act of 1952—Section 241(a)(2), I&N Act [8 U.S.C. 1251(a)(2)]—Entry without inspection

ON BEHALF OF RESPONDENT:
Carlos Vellanoweth, Esquire
931 N. Vignes Street, Suite 2
Los Angeles, California 90012

ON BEHALF OF SERVICE:
Ingrid K. Hrycenko
Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire and Farb, Board Members

In a decision dated October 20, 1977, an immigration judge found the respondent deportable as charged and granted her voluntary departure. The respondent appeals from this decision. The record will be remanded.

The respondent is a 33-year-old native and citizen of Mexico. On July 28, 1977, an Order to Show Cause was issued, charging her with deportability under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(2), as one who entered the United States without inspection. At a deportation hearing at which she was represented by counsel, the immigration judge found that the respondent's deportability had been established by clear, convincing, and unequivocal evidence. The basis of this finding was the testimony of a Service investigator and two Service forms presented into evidence a

325

Form I-213, "Record of Deportable Alien," and a Form I-274, "Request for Return to Mexico." This evidence showed that the respondent had entered this country without inspection by paying a smuggler. Objections by the respondent's attorney that this evidence was inadmissible because the respondent had not been warned of her rights were overruled.

On appeal, the respondent contends that the immigration judge erred in denying her motion to suppress the evidence in question in view of the testimony of the Service investigator that he had not advised the respondent of her rights under 8 C.F.R. 287.3 and under the fifth amendment. She also contends that the immigration judge should have allowed her to testify regarding the circumstances of her arrest and interrogation.

We will first address the assertion that the evidence used to establish deportability was inadmissible because the respondent had not been warned of her rights under the fifth amendment and 8 C.F.R. 287.3.

The respondent was arrested without a warrant during a "survey" of a food processing plant. The only Service officer who testified at the hearing stated that although he had taken part in the "survey," he could not recall whether he had arrested the respondent. He stated that he had not conducted the initial field interview, but that he had interviewed the respondent at the District Office. During this latter interview, the respondent "readily answered" the officer's questions, admitting her alienage and the time and manner of her entry. She initially requested voluntary departure and the Form I-274 was prepared along with the Form I-213.[1]

This interview was subject to the provisions of 8 C.F.R. 287.3, which then provided in relevant part:

> An alien arrested without a warrant of arrest under the authority contained in section 287(a)(2) of the Immigration and Nationality Act shall be examined as therein provided by an officer other than the arresting officer, unless no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, in which event the arresting officer, if the conduct of such examination is a part of the duties assigned to him, may examine the alien.... If the examining officer is satisfied that there is prima facie evidence establishing that the arrested alien is in the United States in violation of the immigration laws, further action in the case shall be taken as provided in Part 242 of this chapter. An alien arrested without warrant of arrest shall be advised of the reason of his own arrest and his right to be represented by council (sic) of his own choice, at no expense to the Government. He shall also be advised that any statement he makes may be used against him in a subsequent proceeding and that a decision will be made within 24 hours or less as to whether he will be continued in custody or released on bond or

---

[1] Subsequent to this interview, the respondent retained counsel, withdrew the request for voluntary departure, and asked for a hearing to determine deportability.

recognizance . . . .

8 C.F.R. 287.3 (1977).

The officer who interviewed the respondent testified that he had not advised her of the "Miranda" warnings. These warnings were not necessary. See *Navia-Duran v. INS*, 568 F.2d 803 (1 Cir. 1977); *Trias-Hernandez v. INS*, 528 F.2d 366, 368 (9 Cir. 1975). He further testified, however, that he did not advise her that she "had a right to an attorney."[2] Such a warning was required to be given at some point under the provisions of 8 C.F.R. 287.3.[3]

The failure to comply with a regulatory requirement of this nature would be relevant in assessing any question of voluntariness. *See Navia-Duran v. INS, supra* at 808. Moreover, the further question arises of whether or not a violation of 8 C.F.R. 287.3, without a showing that the statement that followed was involuntarily made, may lead to a finding that the statement is inadmissible. Our conclusion is that such a violation may lead to a finding of inadmissibility under certain circumstances.

It has been often stated that an "agency of the government must scrupulously observe rules, regulations, or procedures which it has established" and that when "it fails to do so, its action cannot stand and courts will strike it down . . . " *United States v. Heffner*, 420 F.2d 809, 811 (4 Cir. 1969), and the cases cited therein. A rigid rule has not emerged, however, under which every violation of an agency regulatory requirement results in the invalidation of all subsequent agency action or the exclusion of evidence from administrative proceedings. *See United States v. Caceres*, 99 S. Ct. 1465 (1979); *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532 (1970); *United States v. Calderon-Medina*, 591 F.2d 529 (9 Cir. 1979); *United States v. Floulis*, 457 F. Supp. 1350 (W.D. Pa. 1973). Once one goes beyond stating these

---

[2] Although this answer arose in the context of questioning the officer about "Miranda" warnings, we must assume on this record that no warning as to the more limited right to counsel as required under 8 C.F.R. 287.3 was given.

[3] The requirement in 8 C.F.R. 287.3 (1977) concerning advice as to right to counsel was unclear in two respects. First, it was not clear whether the warning was required at the onset of the interview or only after it was determined that a prima facie case of deportability existed. The regulation has since been revised (or clarified) to provide that the advice is not necessary *until* it is determined that a prima facie case exists. *See* 8 C.F.R. 287.3 (February 22, 1979). The regulation was also not clear on its face as to the nature of the advice required (*i.e.*, whether an alien should be advised of a limited right to counsel at that interview or instead advised only of a limited right to counsel at any deportation or exclusion proceeding should such proceedings become necessary). The regulation has been understood to require the latter more limited advice (*see Navia-Duran v. INS, supra* at 809) and the Service apparently intended this more limited requirement (*see* 44 Fed. Reg. 4652 (1979)). *See also* Crosland, *Arrest, Interrogation and Detention of Aliens and the Munoz Case*, Interpreter Releases, Vol. 56, No. 34, p. 408 (Aug. 31, 1979).

two general principles, however, the dividing line between those administrative regulatory violations which will or will not render subsequent agency actions invalid becomes more difficult to establish.

The Supreme Court has stated that the "duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law." *United States v. Caceres, supra* at 1470. Thus, in *Bridges v. Wixon,* 326 U.S. 135, 152-153 (1945), the Court ruled invalid a deportation ordered on the basis of statements which were not taken in compliance with rules designed "to afford [the alien] due process of law" by providing "safeguards against essentially unfair procedures." The Court in *Bridges* reaffirmed the statement in *U.S. ex rel. Bilokumsky v. Tod,* 263 U.S. 149, 155 (1923), that "one under investigation with a view to deportation is legally entitled to insist upon observance of rules promulgated by the Secretary [of Labor] pursuant to law." Thus, where agency action is required by constitutional or statutory law, violation of an implementing regulatory requirement is subject to serious challenge.

However, even where regulations are not founded on a constitutional or statutory requirement, an agency still has a "duty to obey them." *United States v. Caceres, supra* at 1471, n. 14. Where "the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures .... even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz,* 415 U.S. 199, 235 (1974). *See also Vitarelli v. Seaton,* 359 U.S. 535 (1959); *Service v. Dulles,* 354 U.S. 363 (1957); *U.S. ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954). *But see American Farm Lines v. Black Ball Freight Service, supra.*

In reviewing these precedents, the United States Court of Appeals for the Ninth Circuit has concluded that a two-prong test should be used to determine whether deportation proceedings should be invalidated where a Service regulation has been violated. *See United States v. Calderon-Medina, supra.* First, the regulation in question must serve a "purpose of benefit to the alien." *Calderon-Medina* at 531. Secondly, if it does, the Ninth Circuit has held that the regulatory violation will render the proceeding unlawful "only if the violation prejudiced interests of the alien which were protected by the regulation." *Calderon-Medina, id.* In that case, where detained aliens had not been advised at the time of their deportation proceedings of the right to communicate with a consular or diplomatic officer of their country of nationality, criminal proceedings were remanded to allow the aliens the opportunity to "specifically" identify any prejudice resulting from the violation. The District Court was directed to determine whether the violation "harmed the aliens" interests in such a way as to affect potentially the outcome of their deportation proceeding." *Calderon-Medina* at 532.

328

We will adopt this "prejudice" test set forth by the Ninth Circuit. In those cases where agency action has been invalidated by the Supreme Court there has either been an expressed or clearly apparent prejudice to the individual as a result of a violation of a rule or regulation promulgated at least in part to bestow a procedural or substantive benefit on the individual in question. Where compliance with the regulation is mandated by the Constitution, prejudice may be presumed. Similarly, where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency, it can be deemed prejudicial. See *Vitarelli* v. *Seaton, supra; Service* v. *Dulles, supra; U.S. ex rel. Accardi* v. *Shaughnessy, supra.* As a general rule, however, prejudice will have to be specifically demonstrated.

We do not find that the case before us is one in which the claimed regulatory violation may be presumed to have prejudiced the respondent. We are satisfied, however, that 8 C.F.R. 287.3 was intended to serve a purpose of benefit to the alien. We will accordingly remand the record to allow the respondent the opportunity to demonstrate that the investigating officer's action prejudiced her interests that were protected by the regulation and that such prejudice affected the outcome of the deportation proceedings. In this regard, it should be determined whether evidence supporting a finding of deportability arose prior to the apparent regulatory violation. Moreover, on remand the parties to the proceeding should be given the opportunity to present their positions regarding the ambiguity of the regulatory requirements at issue here. *See* footnote 3, *supra.* Further, the respondent should be given the opportunity to testify concerning the circum stances of her arrest and questioning.

ORDER: The record is remanded for further proceedings consistent with this opinion.