# In re Jorge Tadeo Carrera HERNANDEZ, Respondent

### File A73 679 272 - Newark

### *Decided January 25, 1996*

### U.S. Department of Justice
### Executive Office for Immigration Review
### Board of Immigration Appeals

(1) The violation of 8 C.F.R. § 242.1(c) (1995), which requires that the contents of an Order to Show Cause and Notice of Hearing (Form I-221) be explained to an alien under certain circumstances, does not necessarily result in prejudice to the alien.

(2) Where an alien raises the issue of violation of 8 C.F.R. § 242.1(c), and the Immigration Judge finds that the alien was prejudiced by such violation, the Immigration Judge, where possible, can and should take corrective action short of termination of the proceedings.

(3) The explanation requirement of 8 C.F.R. § 242.1(c) is not jurisdictional. As long as the statutory requirements regarding the Order to Show Cause and regarding notice of deportation proceedings are satisfied, and the alien appears for the scheduled hearing, service of the order without prior explanation of its contents by the Service is sufficient to confer jurisdiction over the alien.

Pro se

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Stewart Deutsch, Appellate Counsel, and Roxanne C. Hladylowycz, General Attorney

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, MATHON, and GUENDELSBERGER, Board Members. Dissenting and Concurring Opinion: ROSENBERG, Board Member.

SCHMIDT, Chairman:

In a decision dated April 12, 1995, an Immigration Judge terminated the deportation proceedings against the respondent, finding that the service of the Order to Show Cause and Notice of Hearing (Form I-221) on the respondent was defective. The Immigration and Naturalization Service appealed. The order of the Immigration Judge will be vacated and the record will be remanded to the Immigration Judge.

## I.  BACKGROUND OF THE CASE

According to an Order to Show Cause dated March 8, 1995, the respondent is a native and citizen of Ecuador who was admitted to the United States

as a nonimmigrant visitor on June 10, 1994, and who remained beyond the time permitted. The respondent filed an application for asylum on January 23, 1995, and was interviewed on that application by an asylum officer on March 2, 1995.

On March 28, 1995, the respondent appeared at Immigration and Naturalization Service offices to receive the asylum officer's decision in his case. The case was referred to an Immigration Judge and the respondent was personally served on that date with an Order to Show Cause, which he signed. The Order to Show Cause directed the respondent to appear for a hearing before an Immigration Judge on April 12, 1995.

The respondent appeared for the scheduled master calendar hearing on April 12, 1995. However, the Immigration Judge questioned the sufficiency of the service of the Order to Show Cause. He noted that that document states that it was not read to the respondent, and that there appeared to be no compliance with the regulation that requires that the contents of the Order to Show Cause be "explained" to the respondent when it is served personally. *See* 8 C.F.R. § 242.1(c) (1995). When the Immigration Judge asked the respondent, "Did they explain to you what this document meant?" the respondent answered, "No. They only told me I should come over here."

The Service general attorney argued at the hearing that service was adequate, noting that the Order to Show Cause is in both English and Spanish, that the respondent testified that he can read Spanish, and that his appearance at the hearing proved that he understood the document. The Service attorney also referred to a memorandum from the Director of the Newark Asylum Office which outlines the procedures followed by that office in serving Orders to Show Cause. According to the Service brief on appeal, the memorandum states that asylum officers do routinely explain Orders to Show Cause when they serve them on aliens. However, this memorandum is not in the record before us.

Based on these facts, the Immigration Judge found inadequate service of the Order to Show Cause. He gave the Service an opportunity to re-serve the Order to Show Cause, but that offer was declined. The Immigration Judge concluded, "I cannot understand how the Service can come before the Court and tell me that the contents and the nature of the proceedings were explained if that explanation is not done in a manner that the respondent can understand, either orally or in written form." He therefore terminated the proceedings.

## II. ISSUE PRESENTED

The question presented in this case is what consequences result when personal service of an Order to Show Cause is made without an explanation of its contents as required by 8 C.F.R. § 242.1(c).

## III. STATUTORY AND REGULATORY FRAMEWORK

The current statute relating to Orders to Show Cause is found at section 242B of the Immigration and Nationality Act, 8 U.S.C. § 1252b (1994). That section details the information which must be contained in the Order To Show Cause, but does not specify in what manner this information must be explained to the subject of the order. Subsection 242B(a)(3) does provide:

Each order to show cause or other notice under this subsection—

(A) shall be in English and Spanish, and

(B) shall specify that the alien may be represented by an attorney in deportation proceedings under section 242 and will be provided, in accordance with subsection (b)(1), a period of time in order to obtain counsel and a current list described in subsection (b)(2).

In addition, section 242(b)(1) of the Act, 8 U.S.C. § 1252(b)(1)(1994), regarding notice of deportation proceedings, provides that "the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held."

Beyond these provisions, there is no statutory requirement that the order and its meaning and implications be explained to the respondent.

The applicable regulation, however, does include a requirement that at least in certain circumstances the Order to Show Cause be explained to the respondent. The regulation at 8 C.F.R. § 242.1(c) states in part: "When personal delivery of an order to show cause is made by an immigration officer, the contents of the order to show cause shall be explained . . . ." Thus, the Service has imposed upon itself the requirement that the Order to Show Cause be explained to the subject of the order when service is personally made. Having imposed that requirement, the Service should comply with it.

We note, however, that the explanation requirement of 8 C.F.R. § 242.1(c) is not jurisdictional. That is, service is not automatically inadequate to obtain jurisdiction over a respondent where there has not been compliance with the regulation. As long as the statutory requirements have been satisfied, and the alien appears for the scheduled hearing, service of the order without explanation of its contents is sufficient to meet the statutory requirements and confer jurisdiction over the alien.

## IV. DISCUSSION

The violation of a Service regulation will not necessarily invalidate a deportation proceeding. Rather, this Board has consistently held that the violation of a regulatory requirement invalidates a proceeding only where the regulation provides a benefit to the alien and the violation prejudiced the interest of the alien which was to be protected by the regulation. *Matter of Garcia-Flores,* 17 I&N Dec. 325 (BIA 1980); *see also United States v. Calderon-Medina*, 591 F.2d 529 (9th Cir. 1979).

The explanation requirement of 8 C.F.R. § 242.1(c) clearly does provide a benefit to the alien. However, we do not find that the violation of that regulation necessarily results in prejudice to an alien and in fact, we anticipate that the number of cases where prejudice from such a violation can be shown will as a practical matter be limited. This is so for several reasons. First, the Order to Show Cause which is provided to all aliens sets forth the time and location of the hearing, and also provides a detailed and comprehensive description of the deportation proceeding and the rights the respondent has in the proceeding. Thus, a thorough explanation of the meaning and significance of the Order to Show Cause is contained in the form itself.

Second, once an alien appears at the hearing, the Immigration Judge is required to explain the allegations and charges in the order "in nontechnical language." 8 C.F.R. § 242.16(a) (1995). This parallel, independent explanatory requirement makes it unlikely that an alien who appears at a hearing will be prejudiced by a violation of 8 C.F.R. § 242.1(c).

Finally, we note that an explanation of the contents of the Order to Show Cause must, under 8 C.F.R. § 242.1(c), be given only when the order is served in person, yet service is commonly accomplished by mail, as well as personally. The fact that the regulation only requires the explanation in the one case and not the other also demonstrates that there is no inherent prejudice which attaches when the regulation is not followed.

Since the right to fair and full notice of the proceedings is well protected by the language of the Order to Show Cause and by the requirement that the Immigration Judge again explain the proceedings to the alien at the hearing, we do not foresee that there will be many cases where failure to comply with the pertinent part of 8 C.F.R. § 242.1(c) will result in actual prejudice to an alien.[1] We also note that we do not expect that many of these cases will arise, since we assume there is general compliance with the regulation.

---

[1] One court has held that a regulatory violation will always invalidate a deportation proceeding if the violation implicated a fundamental constitutional or statutory right. *Waldron v. INS*, 17 F.3d 511 (2d Cir. 1993), *cert. denied*, 513 U.S. 1014 (1994). Only where such a right is not implicated is the alien required to show that he was prejudiced by the violation. In our view, no fundamental statutory or constitutional right is implicated in the explanation portion of 8 C.F.R. § 242.1(c). The statute requires that the Order to Show Cause itself detail the nature of the deportation proceedings, the legal authority for those proceedings, the acts or conduct alleged to be in violation of law and the charges against the alien, as well as the statutory provisions alleged to have been violated. Sections 242B(a)(1)(A)-(D) of the Act. The statute also requires that the order notify the alien of his right to be represented by counsel and requires that the alien be provided with a list of counsel. Section 242B(a)(1)(E) of the Act. Section 242(b)(1), as indicated above, requires only that reasonable notice of the nature of the charges and the time and place of the hearing be given to the alien. The Order to Show Cause forms used by the Service in this and all deportation cases fulfill these statutory requirements. Thus, there is no statutory right which is violated when further explanation of the Order to Show Cause is not offered at the time it is personally served. Similarly, the failure to comply with 8 C.F.R. § 242.1(c) does not violate a fundamental constitutional right. As discussed above, the Order to Show Cause form itself, and the explanation of the proceedings provided by the

In addition, where the respondent does raise the issue of violation of this regulation, and the Immigration Judge finds that the respondent was prejudiced by such violation, the Immigration Judge, where possible, can and should take corrective action short of termination of the proceedings. For example, if the alien asserts that, had he fully understood the nature of the proceedings, he would have sought more time to prepare his case, or he would have appeared with counsel, the Immigration Judge could allow additional time to prepare or to obtain counsel.

## V. RESOLUTION OF THIS PARTICULAR CASE

In the particular case before us, the Immigration Judge terminated the proceedings without inquiring into the issue of prejudice. Pursuant to today's decision, a remand is necessary so that the alien can have the opportunity to show that he was prejudiced by the violation of 8 C.F.R. § 242.1(c).[2] Alternatively, the Service may re-serve the Order to Show Cause on the respondent and thus moot the issue of improper service under the regulation.[3]

Accordingly, the following order will be entered.

**ORDER:** The decision of the Immigration Judge, dated April 12, 1995, is vacated, and the record is remanded to the Immigration Judge for action in accordance with the foregoing decision.

*DISSENTING IN PART AND CONCURRING IN PART:* Lory D. Rosenberg, Board Member

I differ from the majority in that I find that a violation of 8 C.F.R. § 242.1(c) (1995) does constitute prejudice per se when it occurs in the course of referral of a deportable asylum applicant for proceedings before the Immigration Court, but I join the majority as I believe the prejudice to this respondent can be cured upon remand.

New procedures for applicants seeking political asylum in the United States specify that in the case of an alien who appears to be deportable, requests not affirmatively granted by an Immigration and Naturalization

---

Immigration Judge, fully protect an alien's due process right to notice of the hearing and of the charges against him.

[2] In cases such as this one, which are governed by the new asylum regulations (at 8 C.F.R. § 208 (1995)), if the Immigration Judge determines that the Service's failure to comply with 8 C.F.R. § 242.1(c) resulted in prejudice to the alien, that ruling could presumably be considered in determining who "caused" the delay for purposes of 8 C.F.R. § 208.7(a)(3). That regulation deals with employment authorization for asylum applicants, a matter which is beyond our jurisdiction. However, the determination of who caused a delay in processing an asylum case which is before an Immigration Judge is properly made by the Immigration Judge.

[3] We note that on appeal the Service has suggested that it should have been given an opportunity to re-serve the Order to Show Cause at the hearing. The transcript indicates that the Immigration Judge in fact made such an offer, but the Service at that time refused. The Service has changed its position on appeal.

Service asylum officer are to be referred to an Immigration Judge for the commencement of deportation proceedings. 8 C.F.R. § 208.14(b)(2) (1995). These new regulations require the individual to appear in person to receive such a decision. 8 C.F.R. §§ 208.9(d), 208.17.[1] Section 241.1(c) of 8 C.F.R. provides that one served personally with an Order to Show Cause ("OSC") why he or she should not be deported is to be read and given an oral explanation of the notice. This rule, 8 C.F.R. § 242.1(c), was not superseded by the January 1, 1995, asylum rules and should apply with equal force to the instances of personal service contemplated by the asylum regulations.

It is my view that an asylum applicant whose case is referred to an Immigration Judge and who is not notified orally in the course of personal service, but only is advised of the OSC's contents when he or she appears before an Immigration Judge, should be presumed to suffer prejudice to his or her fundamental due process right to notice as the result of the agency's failure to follow its own regulation. *Cf. Matter of Santos*, 19 I&N Dec. 105, 107 (BIA 1984); *Matter of Garcia-Flores*, 17 I&N Dec. 325 (BIA 1980).[2] The Service requires the alien to appear in person to receive his or her asylum decision "and any other material," 8 C.F.R. § 208.9(d),[3] and the pre-existing rule regarding personal service of an Order to Show Cause requires an explanation of its contents.[4] Notwithstanding whether the Order to Show Cause may state in writing the respondent's rights or not, the Service went to great lengths to set up new regulations governing the speedy processing of asylum

---

[1] These provisions reflect the purpose of the entire regulatory scheme to streamline the adjudication of applications and to insure continuity with deportation and exclusion procedures in cases where asylum is not granted. Also notable in the new regulations' emphasis on timeliness are the many provisions which restrict an applicant from applying for and being granted employment authorization during the pendency of his or her application, unless at least 150 days have passed from the first filing of a complete application, and so long as no delays during that time period were attributable to the *applicants. See generally* 8 C.F.R. § 208.7; *see also* 8 C.F.R. § 208.9(d).

[2] The Board has adopted the test enunciated by the United States Court of Appeals for the Ninth Circuit in *United States v. Calderon-Medina*, 591 F.2d 529 (9th Cir. 1979), which holds that whether or not a deportation hearing should be invalidated depends upon whether the agency regulation that has been violated serves a purpose or benefit to an alien, and whether the violation prejudiced interests of the alien which were protected. *See also Hernandez-Luis v. INS*, 869 F.2d 496 (9th Cir. 1989). As such, it does not distinguish, as I would urge us to do, those regulations such as the one before us in which fundamental rights are at stake.

[3] In fact, the regulation (which, read together with 8 C.F.R. § 208.14, clearly incorporates an OSC, the charging document that initiates deportation proceedings before an Immigration Judge), extends the period of time within which an applicant may not apply for employment authorization.

[4] While I recognize that our precedents say otherwise, I subscribe to the belief that, in general, an error which affects such a fundamental right as the right to notice is inherently prejudicial. *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Waldron v. INS*, 17 F.3d 511 (2d Cir.), *cert. denied*, 513 U.S. 1014 (1994); *Sewak v. INS*, 900 F.2d 667, 670 n.7 (3d Cir. 1990) (rejecting harmless error doctrine where respondent did not receive notice and the Service bore the burden of proof to establish deportability).

claims, and the credibility of such procedures is diminished if they are not scrupulously followed.[5]

It is not difficult to imagine the prejudice to a respondent's hearing rights that may be presumed to inure in such cases. There is prejudice in a respondent's having lost time to prepare for these "fast track" deportation hearings which now immediately follow "referrals" of requests for asylum first made before a Service asylum officer. 8 C.F.R. § 208.14(b)(2). Without the oral notice required by the regulation, a respondent arguably is denied the advance opportunity to obtain counsel, garner more evidence, arrange for witnesses, or prepare in any other way in advance of the hearing date set on the Order to Show Cause. While there may be a later continuance granted to so prepare, continuances for such purposes are limited and subject to the discretion of the Immigration Judge, *see* 8 C.F.R. § 3.29 (1995), and this "lead time" is forever lost.

Moreover, a respondent in such cases is prejudiced further because the Service's failure to provide a timely oral notice and explanation at the time of service of the OSC causes the respondent to have to seek a continuance to obtain counsel and prepare his or her case. If "charged" to the respondent, the granting of a continuance to cure the violation is prejudicial because it stops the employment authorization document ("EAD") "clock." 8 C.F.R. § 208.7(a)(3).[6]

A respondent referred under the asylum regulations should not be so restricted or burdened with demonstrating prejudice on account of the Service's failure to follow the rules in such cases.[7] I would concur, however, that an Immigration Judge can cure this prejudice short of termination in such a case by (a) requiring the Service to ask for a continuance equal to the time between service of the Order to Show Cause and the first Immigration Judge

---

[5] While it might be argued that the fundamental right to notice does not specifically require oral notice, I note the Board not only has acknowledged the basic notion that an agency must enforce regulations which extend statutory or constitutional protections, but even has recognized that agency procedures which go beyond fundamental guarantees are to be followed. *See United States v. Caceres*, 440 U.S. 741, 752 n.14 (1979) (duty to enforce agency regulations most evident where there exists a constitutional or statutory requirement, but even where not so founded, an agency has a duty to obey them); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (where "the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures *even where the internal procedures are possibly more rigorous than otherwise would be required.*" (Emphasis added.)).

[6] As noted *supra* note 1, the 1995 asylum regulations preclude an asylum applicant from establishing eligibility for employment authorization until after 150 days have passed from the date of filing a complete asylum application. An additional 30 days is given to the Service for processing of the application. *See* 8 C.F.R. § 208.7(a)(3). Any delays attributable to the applicant "stop the clock" and shall not be counted towards those time periods.

[7] In this regard, the majority concludes that the regulation in question does benefit the alien, but declines to find across the board that all violations of it will result in prejudice to an alien's protected interests.

hearing date under 8 C.F.R. § 208.7(a)(3); and (b) ordering that the EAD clock continues to run.

In the instant case, the Immigration Judge terminated rather than continued the proceedings. I note that the termination of these proceedings was on account of the Service's failure to follow its regulations and should not be treated as "requested or caused" by the respondent. Consequently, in my opinion, in the instant case the respondent should be credited with the 150 days' time (which now has passed since the filing of his complete asylum application) towards his employment authorization document and should be eligible to apply for and be issued an EAD forthwith.