[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16117
_____

Agency No. A205-854-783

JOSE OSBALDO BATRES-GARAY,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 23, 2018)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and WOOD,[*] District
Judge.

PER CURIAM:

_____

[*] Honorable Lisa Godbey Wood, United States District Judge for the Southern District of
Georgia, sitting by designation.

This petition for review of a decision of the Board of Immigration Appeals requires us to decide whether the Board erred when it denied Jose Osbaldo Batres-Garay's motion to suppress evidence of his alienage without an evidentiary hearing and to terminate his removal proceedings. Batres, a native and citizen of El Salvador, declared that officers lacked consent when they entered the apartment that he shared with his brother's family around 5:30 a.m. The immigration judge disregarded Batres's description of the officers' entry because he failed to state that he had firsthand knowledge of it, and the immigration judge ruled that Batres was not entitled to an evidentiary hearing on his motion to suppress. The immigration judge then ordered Batres removed from the United States. The Board later dismissed Batres's appeal. Batres contends that he established a prima facie case that the officers violated the Fourth and Fifth Amendments and several federal regulations. We deny Batres's petition in part and dismiss it in part.

## I. BACKGROUND

Deportation officers of Broward County Fugitive Operations apprehended Jose Osbaldo Batres-Garay, a citizen of El Salvador who had not been admitted, inspected, or paroled into the United States, when the officers searched the apartment where Batres lived with his brother's family. While Batres was sleeping around 5:30 a.m., he was "awakened by loud voices outside [of their] apartment." Batres "did not pay attention" or "get ou[t] of [his] bed." He heard knocks on the

2

door, but still remained in bed. Officers then entered the bedroom where Batres "was sleeping . . . without . . . knocking on [his] door[,] yelled at him[,] and told [him] to get up and that [he] was under arrest." The officers "pulled [Batres] out of [his] bed wearing only [his] underwear," refused to allow him to get dressed, and brought him into the living room. After an officer "demand[ed]" Batres's identification, he told them that his passport was in the car, and Batres's sister-in-law and one of the officers went to obtain it. The officers remained in the apartment for about 30 to 45 minutes after they told Batres that he was under arrest. They then left without taking Batres or his relatives anywhere.

Agent A. Arman, one of the officers, submitted a Form I-213, Record of Deportable/Inadmissible Alien, after his encounter with Batres. On that form, he stated that Batres was a citizen of El Salvador who had "not [been] admitted, inspected, or paroled into the United States by a[n] . . . [i]mmigration [o]fficial" and described his encounter with Batres. He stated that he and other deportation officers "apprehended" Batres during the search of an apartment for another person. And he stated that he witnessed Batres's sister-in-law give consent to enter the apartment to another deportation officer.

Batres filed a motion to suppress the Form I-213 and to terminate the removal proceedings. He argued that the government obtained the evidence of his alienage in the Form I-213 in violation of the Fourth and Fifth Amendments and in

3

violation of federal regulations. In support of his motion to suppress, Batres submitted a declaration in which he described his encounter with the deportation officers. Batres stated both that he had "personal knowledge of the facts [in the declaration]" and that the facts in the declaration were "true and correct to the best of [his] knowledge, information, and belief."

In his declaration, Batres described the officers' entry into his bedroom and their questioning of him, but he also detailed how the officers entered the apartment while he remained in his bedroom. He stated that his brother and sister-in-law got out of their bed in another room. His "brother looked outside the window" and saw "approximately seven or eight armed individuals." Batres explained that he "was surprised that someone was at [their] door so early but stayed in bed and let [his] brother deal with the unexpected visitor at such an early hour." When Batres's brother and sister-in-law went to the front door, his brother "cracked the door open" and "one of the officers st[u]ck his foot [i]n the door, pushed it open[,] and entered [the] home." The officers asked Batres's brother and sister-in-law for their identification and "whether there were other people in the home."

The immigration judge denied Batres's motion. The immigration judge reasoned that "[o]nly an egregious violation of the Fourth Amendment or other liberties that might transgress notions of fundamental fairness or undermine the

4

probative value of the evidence will trigger suppression in a civil [i]mmigration proceeding." And the immigration judge explained that Batres was required to "present a prima facie case" of an egregious violation "[t]o obtain a suppression hearing." The immigration judge also explained that "[a]bsent evidence that a Form I-213 contains information that is incorrect or was obtained by coercion or duress, that document is considered inherently trustworthy and admissible as evidence to prove alienage or deportability." The immigration judge explained that Batres "did not personally see the officer force his way into the home," which meant that Batres failed to make "a prima facie showing that the officers entered the home without consent." The immigration judge also explained that Batres failed to "show[] that the officers threatened, coerced, or physically abused the respondent in order to obtain his passport" and that he "failed to present evidence of coercion or duress that might suggest his statement was not voluntary." The immigration judge ruled that "[t]he respondent's affidavit does not overcome the presumption of reliability typically afforded the Form I-213."

The immigration judge ordered Batres removed to El Salvador. The immigration judge found that Batress was unlawfully present in the United States, and the immigration judge determined that "the Form I-213 establishes that the respondent is removable by evidence that is clear and convincing."

5

The Board dismissed Batres's appeal. It reasoned that, even when evidence is obtained in violation of the Fourth Amendment, the evidence is admissible in immigration proceedings unless that violation was an "egregious violation[] where the use of the evidence would constitute a violation of due process." It "f[ou]nd no clear error with the [i]mmigration [j]udge's finding that the record does not reveal coercion on the part of immigration officials." It affirmed the immigration judge's "finding[s]" that "(1) the respondent's brief questioning in his home was standard procedure, (2) the respondent volunteered that his passport was in the car and his sister-in-law retrieved it, and (3) the respondent did not witness the officer's entry into the home because he remained in his room until the officers entered his bedroom." "Based on these properly found facts," the Board concluded that "the use of this evidence was not fundamentally unfair." And the Board concluded that, even if it assumed that the officers violated the Fourth Amendment when they obtained the evidence of Batres's alienage, the violation was not egregious. It also ruled that "the [i]mmigration [j]udge did not violate [Batres's] Fifth Amendment right to due process." And it rejected Batres's arguments that the officers violated federal regulations.

## II. STANDARD OF REVIEW

"We review the decision of the Board and 'the decision of the Immigration Judge to the extent that the Board expressly adopted the opinion of the

6

Immigration Judge.'" *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010) (quoting *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009)). "We review legal conclusions *de novo*, but our review of . . . factual findings is 'limited' by 'the highly deferential substantial evidence test.'" *Sama v. U.S. Att'y Gen.*, 887 F.3d 1225, 1231 (11th Cir. 2018) (quoting *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236–37 (11th Cir. 2006)).

## III. DISCUSSION

Batres makes four arguments. First, Batres argues that the Board should have considered the portion of his declaration in which he described how the officers entered the apartment without consent. Second, he contends that his declaration established a prima facie case of an egregious violation of the Fourth Amendment that entitled him to a suppression hearing. Third, he contends that his declaration also established a prima facie violation of the Fifth Amendment. Fourth, he contends that the officers violated federal regulations and that his removal proceedings should have been terminated. These arguments fail.

### A. *The Immigration Judge Did Not Err by Excluding Batres's Description of Events that He Did Not Personally Observe.*

Batres contends that the immigration judge erred by disregarding the part of his declaration in which he described how the officers allegedly entered the apartment without consent, but we disagree. The Board requires that, to receive an evidentiary hearing on a motion to suppress evidence, an individual bears the

7

burden to "establish[] a prima facie case" with "the sworn statement of persons having personal knowledge of the facts." *Matter of Tang*, 13 I. & N. Dec. 691, 692 (BIA 1971) (citation and quotation marks omitted). Only after the individual satisfies his burden to establish a prima facie case of a violation, "will [the government] be called upon to assume the burden of justifying the manner in which it obtained its evidence." *Id.* But Batres lacked personal knowledge about how the officers entered the apartment because he was in another room when they entered. Batres declared that his brother and sister-in-law answered the door when the officers arrived and that, when his brother "cracked the door open," one of the officers pushed his way into the apartment even though, according to his declaration, Batres remained in his bed in another room.

Batres argues that "personal knowledge is distinct[] from—and broader than—personal observation," but we disagree. "[P]ersonal knowledge" is "[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said." *Personal Knowledge*, *Black's Law Dictionary* 951 (9th ed. 2004). Indeed, *Garner's Dictionary of Legal Usage* contrasts "personal knowledge" with "information" and "knowledge" by explaining that "[p]ersonal knowledge denotes *much more narrowly* a fact or cluster of facts acquired by firsthand observation of or participation in events being inquired into, coupled with a credible degree of recollection." *Knowledge*,

8

*Garner's Dictionary of Legal Usage* 512 (3d ed. 2011) (emphasis added) (italics omitted). Batres concedes that his declaration "contains information from others" and that he did not personally observe the officers enter the apartment or participate in any effort to bar their entry. And we reject his contention that he can satisfy the requirement of personal knowledge "based on what someone else has said." *Personal Knowledge*, *Black's Law Dictionary*, *supra*, at 951.

To be sure, as Batres points out, "[h]earsay evidence is admissible in immigration proceedings 'if it is probative and its use is not fundamentally unfair so as to deprive the alien of due process.'" *Matter of Vides Casanova*, 26 I. & N. Dec. 494, 499 (BIA 2015) (alteration adopted) (quoting *Cortez v. U.S. Att'y Gen.*, 446 F. App'x 166, 168 (11th Cir. 2011)). But Batres conflates what kind of evidence is required to obtain a hearing for a motion to supress with what kind of evidence is later admissible at a removal hearing. Personal knowledge is required to make a prima facie case for a hearing on a motion to suppress. *Matter of Tang*, 13 I. & N. Dec. at 692. And Batres points to no decision where the Board has defined the term "personal knowledge" to include information based on hearsay. The immigration judge was entitled to disregard Batres's description of how the officers entered the apartment and instead to credit the account in the Form I-213, in which a deportation officer stated that Batres's sister-in-law gave the officers

9

consent to enter. Batres could have, but did not, submit declarations from his brother or sister-in-law to contradict that account.

### B. The Board Did Not Err when It Refused to Suppress the Form I-213 as Obtained in Violation of the Fourth Amendment.

Batres contends that he is entitled to a suppression hearing to determine whether the officers violated the Fourth Amendment and whether the evidence of his alienage in the Form I-213 should be excluded as a consequence. He contends that his declaration established a prima facie case that the officers egregiously violated the Fourth Amendment because they conducted a search of his home before dawn and without consent. He also contends that we should hold that *any* violation of the Fourth Amendment leads to the exclusion of evidence in removal proceedings. We reject these arguments.

Ordinarily, evidence obtained in violation of the Fourth Amendment is admissible in civil immigration proceedings, *Immigration & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1034 (1984), but four justices suggested, and other circuits have held, that there may be an exception to this rule for "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained, *id.* at 1050–51 (opinion of O'Connor, J.); *see also, e.g.*, *Yanez-Marquez v. Lynch*, 789 F.3d 434, 449–50 (4th Cir. 2015) (collecting citations); *Cotzojay v. Holder*, 725 F.3d 172, 179–80 (2d Cir. 2013). We have not addressed the question whether

evidence of alienage obtained from an egregious violation of the Fourth Amendment must be excluded from removal proceedings, and we need not decide it now because Batres failed to make a prima facie showing of an egregious violation of the Fourth Amendment.

Batres's declaration failed to establish an "egregious violation of Fourth Amendment . . . liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." *Lopez-Mendoza*, 468 U.S. at 1050–51 (opinion of O'Connor, J.). He contends that the officers egregiously violated the Fourth Amendment primarily because they entered his home at 5:30 a.m. without consent. But as explained earlier, the immigration judge and the Board were entitled to find that the officers received consent from Batres's sister-in-law to enter the apartment. Because he failed to make a prima facie case that the officers lacked consent to enter the apartment, Batres cannot establish that the officers egregiously violated the Fourth Amendment. Indeed, the Second Circuit, in a decision on which Batres heavily relies, underscored that whether officers obtained consent to enter a home is critical to determining whether officers egregiously violated the Fourth Amendment. *See Cotzojay*, 725 F.3d at 183. That circuit explained that its "assum[ption] that . . . [the] officers did not secure voluntary consent to enter the [petitioner's] home . . . effect[ed] the basic Fourth Amendment violation that must underlie any egregious violation," before it

11

identified "certain aspects of the raid as alleged by [the petitioner] [that] transform[ed] th[at] [assumed] constitutional transgression . . . into an egregious Fourth Amendment violation." *Id.*

We also reject Batres's argument that *Lopez-Mendoza* no longer binds us and that whenever evidence is obtained in a violation of the Fourth Amendment, egregious or otherwise, it should be excluded. He contends that we should "[t]ak[e] into account the changes that have occurred in immigration enforcement since *Lopez-Mendoza*" and reweigh the balance that the Supreme Court struck then. But the Supreme Court has instructed us to "follow the case which directly controls, leaving to [it] the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). "Lower courts are bound even by old and crumbling high-court precedent—until the high court itself changes direction." Bryan A. Garner, *et al.*, *The Law of Judicial Precedent* 29 (2016). We continue to be bound by the holding of the Court in *Lopez-Mendoza* that evidence obtained in violation of the Fourth Amendment is ordinarily admissible in civil immigration proceedings.

### C. The Admission of the Form I-213 Did Not Violate the Due Process Clause of the Fifth Amendment.

Batres contends that the Form I-213 should be suppressed because the officers "created a coercive environment that led to . . . Batres involuntarily providing information about his alienage" in violation of the Due Process Clause

12

of the Fifth Amendment. He relies on a decision of the First Circuit, where the court held that "the use of [an involuntary] statement [of a petitioner] was a violation of her due process rights as guaranteed by the Fifth Amendment." *Navia-Duran v. Immigration & Naturalization Serv.*, 568 F.2d 803, 808 (1st Cir. 1977). We disagree.

Batres has failed to establish that he was coerced into providing evidence of his alienage. We reject his argument that the facts described in his declaration are more coercive than the facts described in *Navia-Duran*. Batres contends that we should "tak[e] into account the time of day, the length of time that the interrogation lasted, and the officers' threats or 'predictions' of [his] fate." But even if we were to assume that these factors present in *Navia-Duran* supplied the governing standard in our circuit, only one of them cuts in his favor. Although the officers arrived before dawn, Batres was questioned for only about 30 to 45 minutes, and nothing in the record establishes that the officers threatened Batres or predicted his fate.

### D. The Board Did Not Err when It Refused to Suppress the Form I-213 as Obtained in Violation of Federal Regulations.

Batres argues that his removal proceedings should have been terminated because the officers violated three regulations, 8 C.F.R. § 287.8(b)(2), (c)(2)(vii), & (f)(2), and he contends that these violations caused him substantial prejudice. We disagree.

13

We cannot consider Batres's argument that the officers violated section 287.8(f)(2), which requires officers to obtain a warrant or consent before they enter a home. Batres failed to raise this argument before the Board, and "we lack jurisdiction to consider claims that have not been raised" there. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (citation and internal quotation marks omitted).

We reject Batres's arguments that his proceedings should have been terminated because the officers allegedly violated two other regulations, sections 287.8(b)(2), which permits officers to "briefly detain" a person based on a reasonable suspicion that a person is illegally present in the United States, and 287.8(c)(2)(vii), which prohibits "[t]he use of threats, coercion, or physical abuse by the designated immigration officer to induce a suspect . . . to make a statement . . . ." To be sure, the Board has concluded that when "a rule or regulation [has been] promulgated at least in part to bestow a procedural or substantive benefit on the individual" and is violated, *Matter of Garcia-Flores*, 17 I. & N. Dec. 325, 329 (BIA 1980), the violation "will . . . render subsequent agency actions invalid," *id.* at 328, when the violation caused prejudice to the individual, *id.* at 329. But section 287.12 states that the regulations in part 287 only "provide internal guidance on specific areas of law enforcement authority" and "do not, are not intended to, shall not be construed to, and may not be relied upon to

14

create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal." 8 C.F.R. § 287.12. So neither section 287.8(b)(2) nor section 287.8(c)(2)(vii) creates a right that Batres could enforce through suppression of evidence in his removal proceeding.

## IV. CONCLUSION

We **DENY** in part and **DISMISS** in part Batres's petition.

MARTIN, Circuit Judge, concurring in the judgment:

I concur in the denial and dismissal of Mr. Batres's petition by the majority. I write separately to state my view that, as a rule, evidence obtained through egregious violations of constitutional rights may properly be suppressed in removal proceedings.

In INS v. Lopez-Mendoza, eight justices of the U.S. Supreme Court suggested that evidence obtained through egregious violations of constitutional rights should be excluded in removal proceedings.  See 468 U.S. 1032, 1034 n.aa1, 1050–51, 104 S. Ct. 3479, 3489; see also id. at 1051–52, 104 S. Ct. at 3490 (Brennan, J., dissenting); id. at 1060, 104 S. Ct. at 3494 (White, J., dissenting); id. at 1060–61, 104 S. Ct. at 3494–95 (Marshall, J., dissenting); id. at 1061, 104 S. Ct. at 3495 (Stevens, J., dissenting).[1]  A number of our sister Circuits have reached the same conclusion about Lopez-Mendoza.  Yanez-Marquez v. Lynch, 789 F.3d 434, 449–50 (4th Cir. 2015); Oliva-Ramos v. Att'y Gen., 694 F.3d 259, 271–72 (3d Cir. 2012); Puc-Ruiz v. Holder, 629 F.3d 771, 778 n.2 (8th Cir. 2010); Gonzalez-Rivera v. INS., 22 F.3d 1441, 1448 n.2 (9th Cir. 1994).

It is true that the Supreme Court's statement about egregious rights violations is dicta, but "[w]e have consistently recognized that dicta from the

---

[1] The majority says only four justices subscribed to this notion.  Maj. Op. at 11.  True, four justices in the majority expressed this view.  However, all four dissenters would have applied the standard exclusionary rule to removal proceedings.

16

Supreme Court is not something to be lightly cast aside." F.E.B. Corp. v. United States, 818 F.3d 681, 690 n.10 (11th Cir. 2016) (quotation omitted). In fact, Supreme Court dicta is "of considerable persuasive value." Id. (quotation omitted).

It is also noteworthy that no one involved in this litigation—neither the U.S. Attorney General, nor the Board of Immigration Appeals, nor the Immigration Judge—suggested the exclusionary rule is not available as a remedy in removal proceedings for egregious violations of constitutional rights.

The predawn arrival of Deportation Officers from the Broward County Fugitive Squad Operations Unit at the house where Mr. Batres was staying, when they were looking for another man, was no doubt frightening and unpleasant for Mr. Batres and his brother's family. However, applying the highly deferential standard by which we must review these things, I agree with the majority that the evidence obtained by those officers that morning is not subject to being suppressed.