**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIA DE RODRIGUEZ-ECHEVERRIA,
                    *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

                    *Respondent.*

No. 06-73670

Agency No.
A77-983-920

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 6, 2008—Pasadena, California

Filed July 25, 2008

Before: Raymond C. Fisher and Richard A. Paez,
Circuit Judges, and James L. Robart, District Judge.*

Opinion by Judge Fisher

---

*The Honorable James L. Robart, United States District Judge for the
Western District of Washington, sitting by designation.

## COUNSEL

Andrew Knapp, Cifuentes Knapp & Associates, Los Angeles, California, for the petitioner.

Jonathan Robbins (argued), Mona Maria Yousif, James A. Hunolt, and Peter D. Keisler, Assistant Attorney General, Department of Justice, Washington, D.C., for the respondent.

## OPINION

FISHER, Circuit Judge:

Maria de Rodriguez-Echeverria ("Rodriguez") petitions for review of a final order of removal, arguing that the Immigration Judge ("IJ") erred in failing to suppress her statements, which she maintains were obtained in violation of Department of Homeland Security ("DHS") regulations and were coerced in violation of the Fifth Amendment's Due Process Clause. She also argues that the Board of Immigration Appeals ("BIA") abused its discretion by affirming the IJ's decision without opinion. We agree that the IJ erred in determining that Rodriguez was not under arrest at the time she gave her incriminating statements, and so we remand for the BIA to determine in the first instance whether her rights under the regulation were infringed and whether her statements were freely given.

## BACKGROUND

Rodriguez is a native and citizen of Mexico who has been a legal permanent resident of the United States since October 2002. On the morning of January 11, 2004, she drove from her home in Anaheim, California to Mexico along with her 7-year-old U.S. citizen son, Erwin. While in Mexico, Rodriguez met up with her sister, Socorro Rodriguez ("Socorro"), who is also a legal permanent resident of the United States. The three of them returned to the United States together with Emmanuel Martinez, who is Rodriguez's and Socorro's 15-year-old nephew and a Mexican citizen. Rodriguez testified that she wanted to take the boy on vacation in the United States. Emmanuel, however, did not have a visa that would allow him to enter.

Border patrol records show that at approximately 5:30 p.m. on January 11, Rodriguez attempted to cross the border back into the United States. Rodriguez testified that she was driv-

ing the car, her sister Socorro was in the front passenger seat and the two boys were in the back. Rodriguez handed the border patrol officer her valid green card, Socorro's valid green card and her son's birth certificate. The documentation she presented for Emmanuel was Soccoro's son's U.S. birth certificate. The border patrol officer became suspicious when Emmanuel failed to respond appropriately to a question posed to him and referred the car to secondary inspection. At secondary inspection, the officers discovered Emmanuel's true Mexican identification in one of his bags. The group was then escorted inside a building, where they were fingerprinted, photographed and made to remove their belts and shoe laces and face a wall. At some point a Form G-166 Report of Investigation was filled out.[1] It listed the "date of arrest" as 6:56 p.m. on January 11, 2004, or about an hour and a half after Rodriguez was referred to secondary inspection.

The government does not dispute Rodriguez's account of events at the border. Rodriguez testified that after several hours of either waiting around or being questioned, she, Erwin, Emmanuel and Socorro were put in a locked room with benches and a toilet. Shortly after two in the morning, Socorro and Erwin were allowed to leave. Rodriguez said that she was cold and hungry, having not eaten anything for over 12 hours, but she was not provided with food and was denied a blanket. At around 3:30 a.m., another officer came on duty and removed Rodriguez and Emmanuel from the holding cell. The officer removed cosmetics and other personal items from Rodriguez's purse and threw them away, telling her that she could not keep them at "la grande prision" (the jail) that she

---

[1]It is not clear when the officer filled out the form, because it does not have a time stamp. The date on the form is January 11, 2004. However, the report says that Socorro was "booked and released," and Socorro testified that she was released sometime around 2:00 a.m. on January 12. Therefore, it seems likely that this form was filled out sometime on or after January 12. It is not clear how or when the officer obtained the information described in the report.

would be going to. Rodriguez was then placed in another holding cell.

At around 11 a.m., Rodriguez was removed from the holding cell and taken to another office to give her declaration. The officers spoke to her in a combination of English and Spanish; the government does not dispute that the officers did not inform her that she had a right to an attorney or that her statements could be used against her. An officer took Rodriguez's tape-recorded statement in Spanish. Rodriguez was informed that her participation was voluntary and was asked a series of questions about how Emmanuel was brought to the border; Rodriguez admitted responsibility for knowingly bringing Emmanuel into the country with a false birth certificate. After the interview, another officer prepared a Form I-213, Notice to Appear, charging Rodriguez with being a removable alien under 8 U.S.C. § 1182(a)(6)(E)(i), which makes inadmissible "[a]ny alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or try to enter the United States in violation of law." The Notice to Appear contained a statement in English informing Rodriguez that her statements may be used against her and that she has a right to counsel of her choosing. She was then released on her own recognizance into the United States.

At Rodriguez's merits hearing before the IJ, the government sought to introduce the transcript of Rodriguez's recorded statement, as well as the I-213 and G-166 forms describing the substance of Rodriguez's admissions. Rodriguez moved to have her statements suppressed, arguing that they were obtained in violation of DHS regulations and were coerced in violation of the Fifth Amendment. Rodriguez submitted declarations from herself and Socorro, supporting her contention that the statements were coerced. These affidavits also stated that it was Socorro, not Rodriguez, who was solely responsible for providing Emmanuel with the false identification document. No other evidence was introduced at the mer-

its hearing and neither side presented witnesses. The IJ denied Rodriguez's motion to suppress, finding that DHS had the right to detain and question Rodriguez and that her statements were not coerced. The IJ then found that clear and convincing evidence established that Rodriguez was removable on the lodged charge. Rodriguez appealed to the BIA, which affirmed without opinion. Rodriguez then filed a timely petition for review with this court.

## ANALYSIS

We have jurisdiction under 8 U.S.C. § 1252(a). Because the BIA issued a streamlined decision, "the IJ's decision becomes the BIA's decision and we evaluate the IJ's decision as we would that of the Board." *Lanza v. Ashcroft*, 389 F.3d 917, 925 (9th Cir. 2004) (internal quotation marks omitted). Questions of law are reviewed de novo. *See Hernandez-Gil v. Gonzales*, 476 F.3d 803, 804 n.1 (9th Cir. 2007). Factual findings are reviewed for substantial evidence. *See Zehatye v. Gonzales*, 453 F.3d 1182, 1184-85 (9th Cir. 2006).

### I.

**[1]** Rodriguez argues that the IJ erred in finding that she was not under arrest at the time she gave her incriminating statements, and therefore that he erred in finding that she was not entitled to be informed of her right to counsel and her right to remain silent as provided by DHS regulations. We agree that the IJ erred in concluding that Rodriguez was not under arrest.

The relevant regulation provides that

> an alien arrested without warrant and placed in formal proceedings . . . will be advised of the reasons for his or her arrest and the right to be represented at no expense to the Government . . . . The officer will also advise the alien that any statement made

may be used against him or her in a subsequent proceeding.

8 C.F.R. § 287.3(c). Another DHS regulation defines an "arrest," and provides that an officer conducts "[i]nterrogation and detention *not* amounting to arrest" when the officer asks questions, "as long as the immigration officer does not restrain the freedom of an individual, not under arrest, to walk away." 8 C.F.R. § 287.8(b)(1) (emphasis added). If an officer makes a warrantless arrest, the officer is instructed to "adhere to the procedures set forth in 8 C.F.R. § 287.3," including the requirement that the alien be informed of certain rights. 8 C.F.R. § 287.8(c)(2)(iv).

Before she was interrogated by immigration officers, Rodriguez was not told that she had a right to counsel or that her statements could be used against her in a future proceeding. The IJ found that Rodriguez's rights under the regulation were not violated, however, because "Immigration Officers at the port of entry had the right to detain [Rodriguez] for questioning both in conjunction with the fact that she was seeking admission to the United States and in conjunction with the fact that officers had reasonable suspicion that she may have been engaging in unlawful activity." Rodriguez does not dispute that the officers had the right to detain and question her, nor does she dispute that they had the right to arrest her without a warrant. Rather, her sole contention is that the officers at the border placed her under warrantless arrest shortly after her arrival at secondary inspection, and that she was therefore entitled to be told of her rights as provided by § 287.3(c) prior to questioning, but was not.

**[2]** As the government has now effectively conceded, the IJ erred in concluding that Rodriguez was merely detained, as opposed to arrested, at the time of her interrogation. The Form G-166 Report of Investigation clearly shows that Rodriguez's "date of arrest" was 6:56 p.m. on January 11, or about an hour and a half after she was referred to secondary inspection and

more than 16 hours before she was asked to give her recorded statement. Further, Rodriguez was placed in a locked room overnight and made to remove her shoes and belt, actions which undoubtedly "restrain the freedom of an individual . . . to walk away." *See* 8 C.F.R. § 287.8(b). Rodriguez's overnight detention at the border therefore qualifies as a warrantless arrest under DHS regulations. The arresting officers were accordingly obligated to comply with the requirements of § 287.3.

Because the IJ erroneously concluded that § 287.3 did not apply, the BIA on remand should determine in the first instance whether § 287.3 requires the officers to warn Rodriguez prior to interrogation that she had a right to counsel and that her statements could be used against her, and if so, whether her statements should be suppressed. Any failure to comply with the regulations may also bear on the question of whether her statements were voluntary under the Fifth Amendment, and so we remand this question as well. *See Navia-Duran v. INS*, 568 F.2d 803, 810 (1st Cir. 1977) (noting that "[i]f the INS had complied with its own regulation," then "the atmosphere of coercion would have vanished" because the alien would have been fully aware of her rights); *see also Matter of Garcia*, 17 I. & N. Dec. 319, 321 (BIA 1980).

**[3]** The government urges us to affirm the IJ on a number of alternate grounds, including that the failure to provide the warnings did not violate § 287.3, that the proper remedy for a violation of § 287.3 would not be the suppression of Rodriguez's statements, and that the admission of her statements, even if in error, was harmless because there was other evidence in the record to sustain the charge of removability. It is well established, however, that "this court cannot affirm the BIA on a ground upon which it did not rely." *Navas v. INS*, 217 F.3d 646, 658 n.16 (9th Cir. 2000); *see also Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) ("In reviewing the decision of the BIA, we consider only the grounds relied upon

by the agency. If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case."). We decline to speculate as to how the IJ may have ruled on these questions and remand so that the agency may consider them in the first instance.

## II.

**[4]** Rodriguez also argues that the BIA erred by summarily affirming, or streamlining, her appeal. DHS regulations provide that the BIA may streamline a case if it determines that

> the result reached in the decision was correct; that any errors in the decision under review were harmless or nonmaterial; and that (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

8 C.F.R. § 1003.1(e)(4)(i). We have jurisdiction to determine whether the BIA complied with its own regulations in deciding to streamline. *See Chen v. Ashcroft*, 378 F.3d 1081, 1087-88 (9th Cir. 2004).

Because we conclude that we must remand to the agency based on its erroneous fact-finding, we need not reach the question of whether the BIA abused its discretion by streamlining Rodriguez's appeal. We note, however, that the BIA has not issued a published opinion interpreting the regulation at issue here, § 287.3, since 1980. *See Matter of Garcia-Flores*, 17 I. & N. Dec. 325 (BIA 1980). The regulation has been amended several times in the intervening years. Whereas the 1977 version considered by the BIA in *Garcia-Flores* stated that "[a]n alien arrested without warrant of arrest shall

be advised" of the reason for his arrest, his right to counsel and that any statement may be used against him, the current version of the regulation states that "an alien arrested without warrant *and placed in formal proceedings*" shall be advised of this same information. *Compare* 8 C.F.R. § 287.3 (1977) *with* 8 C.F.R. § 287.3(c) (2008) (emphasis added). DHS also added a new regulation in 1994, which purports to limit the alien's ability to assert certain rights.[2] Although the government argues that the plain language of § 287.3 indicates that arrested aliens have no right to receive regulatory warnings until formal proceedings are brought, the U.S. Customs and Border Protection appears to have reached a contrary interpretation. *See* U.S. Customs and Border Protection, Inspector's Field Manual 163 (Charles M. Miller, ed.) (2006) (suggesting that arrested aliens should "be given two hours to contact counsel before questioning can proceed").[3]

Given the considerable changes to the law since the BIA last interpreted this regulation and the apparent disagreement among government agencies as to what § 287.3 requires, we direct the BIA to consider carefully on remand its decision to streamline this case. Certainly it cannot be said that "[t]he issues on appeal are squarely controlled by existing Board or federal court precedent," nor can it be said that the issues presented are "not . . . substantial," when they potentially affect the conduct of every immigration officer and the rights of all aliens subject to arrest and interrogation. *See* 8 C.F.R. § 1003.1(e)(4)(i). One of the reasons supporting the issuance of a three-member BIA opinion is "[t]he need to establish a precedent construing the meaning of laws, regulations, or pro-

---

[2]This regulation provides in relevant part that "[t]hese regulations do not, are not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal." 8 C.F.R. § 287.12.

[3]The CBP Field Inspector's Manual is available at http://www.srwlawyers.com/Portals/0/CBP%20Inspectors%20Field%20Manual.pdf.

cedures." 8 C.F.R. § 1003.1(e)(6)(ii). We believe that such guidance is called for here.

## CONCLUSION

Because the IJ erroneously concluded that Rodriguez was not under arrest at the time she was interrogated, we remand so that the agency may consider in the first instance whether Rodriguez's rights under § 287.3 were violated and whether her statements were offered voluntarily.[4]

**GRANTED, REMANDED**.

---

[4]Because we grant the petition and remand, we decline to reach any of Rodriguez's other arguments in favor of granting the petition, including that the IJ erred by allegedly refusing to allow Rodriguez to testify or that he erred by admitting an allegedly improperly certified page of the I-213.