**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MYNOR MANFREDO SAMAYOA-
MARTINEZ,
                    *Petitioner,*

            v.

ERIC H. HOLDER, Jr., Attorney
General,
                    *Respondent.*

No. 04-74220

D.C. No.
Agency No.
A078-461-205

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 20, 2008*
Pasadena, California

Filed March 3, 2009

Before: Ferdinand F. Fernandez, Consuelo M. Callahan and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

H. Varvandeh, Los Angeles, California, for the petitioner-appellant.

Richard M. Evans, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent-appellee.

**OPINION**

IKUTA, Circuit Judge:

Mynor Manfredo Samayoa-Martinez seeks relief from a final order of removal on the ground that the immigration judge (IJ) erred in admitting a Form I-213 (Record of Deportable/Inadmissible Alien) into evidence. Samayoa alleges that this Form I-213 included information that the Immigration and Naturalization Service (INS) obtained in violation of its own regulations. Because we conclude that the INS did not commit any regulatory violation, we deny Samayoa's petition for review.

I

On January 18, 2001, John Lomeli, a military police officer with the China Lakes Police Department, observed a car crossing a solid white line on a street on the China Lake Naval Air Weapons Station. After making a routine traffic stop, Lomeli questioned Samayoa, who was driving the car, and the three passengers. Samayoa and his passengers admitted they were not citizens of the United States. Nor were they able to produce valid immigration documents in response to Lomeli's request for identification. According to Samayoa, Lomeli ordered Samayoa and the passengers out of the car and handcuffed them. Lomeli contacted his supervisor, who in turn contacted the INS.[1] A border patrol agent questioned Samayoa over the telephone but did not inform him of his procedural rights under immigration law. After this telephone interview, Lomeli transported Samayoa and the other passengers to a nearby police station, where they were fingerprinted and photographed. Lomeli then transported Samayoa and the

---

[1] Congress transferred the functions of the former INS to the Department of Homeland Security on March 1, 2003. The transfer does not affect any legal issues in this case, and we will therefore continue to refer to the agency involved as the INS.

passengers to the Jawbone Canyon Ranger Station outside Bakersfield, California, where they were transferred into INS custody. Samayoa alleges he was rearrested and once again was not advised of his procedural rights.

While in INS custody, Samayoa and his passengers were transferred to Bakersfield, California. The INS prepared a Form I-213, which included Samayoa's name, country of nationality, and time, manner, and place of his last entry into the United States. On the same day, the INS personally served Samayoa with a Notice to Appear (NTA), charging him with removeability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i)[2] and requiring him to appear in immigration court. The INS filed Samayoa's NTA with the immigration court on January 24, 2001.

At Samayoa's deportation hearing, the government moved to enter the Form I-213 into evidence. Samayoa filed a motion to suppress the Form I-213 on the ground (among others) that the INS had obtained the information contained in the Form I-213 in violation of several federal regulations. The IJ denied the motion to suppress. Because the evidence in the Form I-213 established that Samayoa was an alien, and Samayoa could not demonstrate that he was in the United States legally, the IJ determined that Samayoa was removable. The IJ granted Samayoa's request for voluntary departure.

On appeal, the BIA affirmed the IJ's determination, citing *Matter of Burbano*, 20 I & N Dec. 872, 874 (BIA 1994). Samayoa timely filed this petition for review.

---

[2]8 U.S.C. § 1182(a)(6)(A)(i) provides: "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissable."

## II

We have jurisdiction under 8 U.S.C. § 1252(a). Because the BIA cited its decision in *Burbano* and did not disagree with any part of the IJ's decision, "we review the IJ's decision as if it were that of the BIA." *Abebe v. Gonzales*, 432 F.3d 1037, 1039 (9th Cir. 2005) (en banc) (internal quotation marks omitted). "Factual findings underlying an IJ's order are reviewed for substantial evidence." *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1015 (9th Cir. 2008). Questions of law are reviewed de novo. *Rodriguez-Echeverria v. Mukasey*, 534 F.3d 1047, 1050 (9th Cir. 2008).

On appeal, Samayoa argues that his deportation proceeding was invalid because the INS obtained the information in his Form I-213 in violation of various immigration regulations, and this violation was prejudicial to his interests. This argument is based on *United States v. Calderon-Medina*, 591 F.2d 529 (9th Cir. 1979), where we held that the INS's violation of a regulation requiring detained aliens to be notified that they could communicate with the consular or diplomatic officers of their country could invalidate a deportation proceeding if: 1) the regulation serves a purpose of benefit to the alien; and 2) the violation prejudiced interests of the alien that were protected by the regulation. *Id.* at 531.

Samayoa argues that he qualifies for relief under *Calderon-Medina* because the INS violated its own regulations in two ways. First, Samayoa argues that Lomeli violated 8 C.F.R. §§ 287.1(g), 287.5, and 287.8, which provide that only immigration officers who meet specified qualifications have the authority to arrest aliens suspected of immigration violations, and that the INS must be held responsible for these violations.[3]

---

[3] 8 C.F.R. § 287.1(g) states:

Basic immigration law enforcement training. The phrase basic immigration law enforcement training, as used in §§ 287.5 and

Second, Samayoa alleges the INS violated § 287.3(c), which provides that "an alien arrested without warrant and placed in formal proceedings under section 238 or 240 of the Act" is entitled to certain notifications.[4] Samayoa argues that the

287.8, means the successful completion of one of the following courses of training provided at the Immigration Officer Academy or Border Patrol Academy: [list of training courses omitted].

8 C.F.R. § 287.5 states, in pertinent part:

(c) Power and authority to arrest—

(1) Arrests of aliens under section 287(a)(2) of the Act for immigration violations. The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the arrest power conferred by section 287(a)(2) of the Act and in accordance with 8 CFR 287.8(c):

[list of authorized immigration officers, not including military police, omitted].

8 C.F.R. § 287.8 states, in pertinent part:

(c) Conduct of arrests—

(1) Authority. Only designated immigration officers are authorized to make an arrest. The list of designated immigration officers varies depending on the type of arrest as listed in 8 CFR 287.5(c)(1) through (c)(5).

[4] 8 C.F.R. § 287.3(c) states:

Except in the case of an alien subject to the expedited removal provisions of section 235(b)(1)(A) of the Act, an alien arrested without warrant and placed in formal proceedings under section 238 or 240 of the Act will be advised of the reasons for his or her arrest and the right to be represented at no expense to the Government. The examining officer will provide the alien with a list of the available free legal services provided by organizations and attorneys qualified under 8 CFR part 1003 and organizations recognized under § 292.2 of this chapter or 8 CFR 1292.2 that are located in the district where the hearing will be held. The examining officer shall note on Form I-862 that such a list was provided to the alien. The officer will also advise the alien that any statement made may be used against him or her in a subsequent proceeding.

INS's violation of its regulations prejudiced his interests. Therefore, Samayoa contends, the IJ erred in admitting the Form I-213 into evidence, and his removal proceeding was invalid. We consider each of these arguments in turn.

A

We first consider Samayoa's argument that Lomeli's conduct amounted to a violation by the INS of 8 C.F.R. §§ 287.1(g), 287.5, and 287.8. This argument is premised on the theory that Lomeli (and other military police) were agents of the INS under California law, and as such, were required to comply with immigration regulations. To support his theory, Samayoa cites *People v. Treadwell*, 69 Cal. 226, 236 (1886) (enunciating basic principles of California agency law) and various provisions of the California Civil Code. *See* CAL. CIV. CODE § 2299 ("An agency is actual when the agent is really employed by the principal"); *id.* § 2300 (if the principal "intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him," the principal is responsible for the acts of the ostensible agent).

According to Samayoa, because Lomeli was an actual or ostensible agent of the INS, he could not arrest an alien unless he had first fulfilled the basic training requirements set forth in 8 C.F.R. §§ 287.8, 287.5, and 287.1(g). Because Lomeli had not done so, Samayoa contends the arrest constituted a violation of immigration regulations. *See* CAL. CIV. CODE § 2330. Samayoa argues that, under *Calderon-Medina*, those violations were prejudicial and required the IJ to suppress the statements Samayoa made to Lomeli. The IJ rejected this

Section 283 of the INA is codified at 8 U.S.C. § 1228 (covering expedited removal of criminal aliens).

Section 240 of the INA is codified at 8 U.S.C. 1229a (covering removal proceedings).

argument, holding that Lomeli was not acting as an agent of the INS when he arrested and detained Samayoa, and therefore neither Lomeli nor the INS violated any immigration regulations.

**[1]** We agree with the IJ. Beyond reciting basic principles of agency law, Samayoa provides no factual or legal support for the theory that the military police are agents of the INS and must comply with immigration regulations, and we have found none. Military police have independent legal authority "to arrest and detain civilians for on-base violations of civil law." *United States v. Banks*, 539 F.2d 14, 16 (9th Cir. 1976); *see also* 10 U.S.C. § 809(e) (providing that military police may "secure the custody of an alleged offender until proper authority may be notified"). The IJ found that Lomeli acted independently of the INS in stopping, arresting, and detaining petitioners, and this finding is supported by substantial evidence. There is also no evidence in the record that the INS took steps that would cause a third person to believe the military police were agents of the INS. Accordingly, the IJ and BIA did not err in concluding that Lomeli was not an actual or ostensible immigration officer or agent of the INS and therefore that he was not required to comply with INS regulations. We conclude that Samayoa's claim that his statements to Lomeli and other military police were obtained in violation of 8 C.F.R. §§ 287.1(g), 287.5, or 287.8 is meritless.

B

We next turn to Samayoa's argument that the INS violated 8 C.F.R. § 287.3(c) when the border patrol agent interviewed Samayoa on the telephone without first notifying him of his rights.[5] Samayoa argued to the IJ, and now argues on appeal, that because he was under arrest at the time the border patrol agent conducted the telephone interview, the agent was

---

[5]To the extent that Samayoa is arguing that Lomeli also violated 8 C.F.R. § 287.3, we reject this argument for the reasons explained above.

required to notify Samayoa of his right to counsel, that he had a right to remain silent, and of his right against self-incrimination.**⁶** The IJ determined that the INS did not violate § 287.3(c) because at the time the border patrol questioned Samayoa, the INS had not yet initiated formal removal proceedings against him. Because the INS's obligation to notify the alien of his rights does not attach until the alien has been arrested and placed in such proceedings, the IJ concluded that there was no violation of § 287.3(c).

**[2]** We agree with the IJ's reading of § 287.3(c). Section 287.3(c) requires the INS to inform aliens who have been "arrested without warrant and placed in formal proceedings" of their procedural rights. Formal removal proceedings do not commence until the INS has filed an NTA in the immigration court. 8 C.F.R. § 1239.1(a) ("Every removal proceeding conducted under section 240 of the Act (8 U.S.C. § 1229a) to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the immigration court."); *see also Kohli v. Gonzales*, 473 F.3d 1061, 1066 (9th Cir. 2007) (citing 8 C.F.R. § 1239.1 for the proposition that "[t]he actual removal proceeding to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the immigration court" (internal quotation marks omitted)); *Cortez-Felipe v. INS*, 245 F.3d 1054, 1057 (9th Cir. 2001). Logically, an alien cannot be

---

**⁶**Although we need not address Samayoa's arguments regarding the nature of notifications to which he claims he is entitled, we note that § 287.3 does not require the government to notify the alien of a right to remain silent or a right against self-incrimination. Indeed, in deportation proceedings, "[i]n light of the alien's burden of proof, the requirement that the alien answer non-incriminating questions, the potential adverse consequences to the alien of remaining silent, and the fact that an alien's statement is admissible in the deportation hearing despite his lack of counsel at the preliminary interrogation-Miranda warnings would be not only inappropriate but could also serve to mislead the alien." *Trias-Hernandez v. INS*, 528 F.2d 366, 368 (9th Cir. 1975); *see also United States v. Solano-Godines*, 120 F.3d 957, 960-61 (9th Cir. 1997).

placed in formal proceedings until those proceedings have been commenced with the filing of the NTA. *See* 8 C.F.R. § 245.1(c) (for purposes of determining eligibility for adjustment of status, "[t]he period during which the alien is in deportation, exclusion, or removal proceedings . . . commences . . . [w]ith the filing of a Form I-862, Notice to Appear, with the Immigration Court"); *cf. Rodriguez-Escheverria*, 534 F.3d at 1051 (not reaching the question whether the alien in that case had been placed "in formal proceedings" for purposes of § 287.3(c)).

**[3]** In this case, the INS did not file the NTA for Samayoa in immigration court until January 24, 2001, several days after the border patrol agent questioned him and completed the Form I-213 on January 18, 2001. The NTA, which was served on Samayoa on January 18, 2001, days before he was placed in formal proceedings, includes a statement that he was entitled to representation at no cost to the government. Therefore, Samayoa was notified, even before he was placed in formal proceedings, of his procedural rights.

Nor do *Matter of Garcia-Flores*, 17 I & N Dec. 325 (BIA 1980), and *Navia-Duran v. INS*, 568 F.2d 803 (1st Cir. 1977), support Samayoa's claim that the INS violated § 287.3(c). Both cases are inapposite because they interpret the previous version of § 287.3(c). Before March 1997, § 287.3 provided that "[a]fter the examining officer has determined that formal proceedings under sections 236, 237, or 242 of the Act, will be instituted, an alien arrested without warrant of arrest shall be advised of the reason for his/her arrest and the right to be represented by counsel of his/her choice, at no expense to the government." 8 C.F.R. § 287.3 (1996). The revised regulation changed the timing of this requirement to after the alien is "placed in formal proceedings." *See* 62 Fed. Reg. 10312, 10390 (Mar. 6, 1997) (amending § 287.3 to its current formulation); *see also Rodriguez -Escheverria*, 534 F.3d at 1052 (discussing the history of § 287.3). The conclusion in *Garcia-Flores* and *Navia-Duran* that the INS violates § 287.3 when

it fails to give an alien warnings after an arrest was superceded by the 1997 revisions to the regulations. Therefore, those cases do not avail petitioner here.

Because the INS did not violate § 287.3(c) when it obtained information from Samayoa before notifying him of his procedural rights under immigration law, we need not reach Samayoa's argument that this lack of notice made his statements to the border patrol involuntary. To the extent Samayoa argues that his statements to Lomeli and the INS were involuntary, such an argument also fails. The IJ found that Samayoa's statements were made voluntarily, and substantial evidence supports this determination. Samayoa points to no evidence in the record indicating that he was coerced to tell Lomeli or the border patrol agent that he was not a United States citizen. "[W]here there is nothing in the record indicating that the alien's statement was induced by coercion, duress, or improper action on the part of the immigration officer, and where the petitioner introduces no such evidence, the bare assertion that a statement is involuntary is insufficient." *Cuevas-Ortega v. INS*, 588 F.2d 1274, 1278 (9th Cir. 1979).[7]

## III

**[4]** Because Samayoa has failed to demonstrate that the INS violated its regulations in obtaining the information used to prepare the Form I-213, the IJ did not err in denying Samayoa's motion to suppress the Form I-213. Accordingly, we reject Samayoa's claim that his removal proceedings were invalid.

---

[7]For the first time on appeal, Samayoa raises the arguments that his Form I-213 was inadmissible hearsay and the government erred in failing to produce a witness subject to cross-examination at the immigration hearing to the BIA. Because Samayoa failed to exhaust these issues before the BIA, we lack jurisdiction to consider them. *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004).

**PETITION FOR REVIEW DENIED.**