# Matter of E-R-M-F- & A-S-M-, Respondents

*Decided August 11, 2011*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Until an alien who is arrested without a warrant is placed in formal proceedings by the filing of a Notice to Appear (Form I-862), the regulation at 8 C.F.R. § 287.3(c) (2011) does not require immigration officers to advise the alien that he or she has a right to counsel and that any statements made during interrogation can subsequently be used against the alien.

FOR RESPONDENT: Douglas D. Nelson, Esquire, San Diego, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Ana L. Partida, Assistant Chief Counsel

BEFORE: Board Panel: COLE, PAULEY, and WENDTLAND, Board Members.

PAULEY, Board Member:

In a decision dated April 14, 2010, an Immigration Judge terminated the removal proceedings against both respondents. The Department of Homeland Security ("DHS") has appealed from that decision. The appeal will be sustained as to the male respondent. The record of the female respondent will be returned to the Immigration Judge without further action.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondents are a married couple who are natives and citizens of Guatemala and lawful permanent residents of the United States. The procedural history of their case is complicated.

In a Notice to Appear (Form I-862) dated December 5, 2004, the DHS charged that the respondents were subject to removal under section 212(a)(6)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(E)(i) (2000), for knowingly assisting another alien to enter the United States in violation of law. In a decision dated March 2, 2007, an Immigration Judge declined to terminate the proceedings, finding the respondents removable based on statements they made during interrogation at the border regarding their attempt to smuggle their nephew into the country. The Immigration Judge ordered the respondents removed and denied their

application for asylum and their request for withholding of removal under sections 208 and 241(b)(3) of the Act, 8 U.S.C. §§ 1158 and 1231(b)(3) (2006), respectively.[1]   The respondents appealed from that decision. On November 30, 2007, we summarily affirmed the Immigration Judge's decision after rejecting the respondents' brief as untimely.

The respondents filed a petition for review and a motion for stay of removal with the United States Court of Appeals for the Ninth Circuit. On September 29, 2008, the Ninth Circuit remanded the case to the Board for consideration of the respondents' untimely brief. We reinstated their appeal on November 12, 2008.

On December 31, 2008, we vacated our November 30, 2007, decision summarily affirming the Immigration Judge's order of removal. We also granted the respondents' motion to remand the record to the Immigration Judge in light of the Ninth Circuit's decisions in *Rodriguez-Echeverria v. Mukasey*, 534 F.3d 1047 (9th Cir. 2008), and *Aguilar Gonzalez v. Mukasey*, 534 F.3d 1204 (9th Cir. 2008).[2]  In *Rodriguez-Echeverria*, the Ninth Circuit found that the alien's overnight detention at the border qualified as an arrest and that the arresting officers therefore had to comply with the advisal requirements set forth in 8 C.F.R. § 287.3(c) (2004).  The Ninth Circuit remanded the record for the Board to determine in the first instance whether 8 C.F.R. § 287.3(c) required the arresting immigration officers to warn the alien before interrogation that she had a right to counsel and that her statements could be used against her and, if so, whether her statements should be suppressed. *Rodriguez-Echeverria v. Mukasey*, 534 F.3d at 1051.  The court strongly suggested that we issue a precedent decision on this issue.

Upon the agreement of both parties, another Immigration Judge administratively closed removal proceedings on March 10, 2009, pending the Board's review of *Rodriguez-Echeverria*.  On April 10, 2009, the DHS filed a motion to recalendar the respondents' case in light of *Samayoa-Martinez v. Holder*, 558 F.3d 897 (9th Cir. 2009), which the Ninth Circuit issued after it remanded *Rodriguez-Echeverria* to the Board.  In that case, the Ninth Circuit held that the obligation to notify an alien of his rights under 8 C.F.R. § 287.3(c) does not attach until the alien has been arrested and formally placed

---

[1]  On March 2, 2007, the respondents withdrew their application pursuant to 8 C.F.R. § 1208.16(c) (2007) for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988).  There is consequently no issue before us today regarding that relief.

[2]  The DHS agreed with the respondents that a remand was warranted.  We note that the decision in *Aguilar Gonzalez v. Mukasey* is no longer relevant in this case.

in proceedings. *Samayoa-Martinez v. Holder*, 558 F.3d at 901-02. The court stated that formal proceedings commence with the filing of the Notice to Appear. *Id.* The Immigration Judge granted the motion to recalendar.

On April 14, 2010, the Immigration Judge terminated the proceedings against both respondents without prejudice, finding that the decision in *Samayoa-Martinez* did not overrule or resolve the issue raised in *Rodriguez-Echeverria* and was therefore not controlling. The Immigration Judge acknowledged that the Board's decision on remand in *Rodriguez-Echeverria* was still pending and, because that decision likely would have a direct impact on the respondents' case, concluded that it would be fundamentally unfair and a waste of resources to proceed without the benefit of the Board's guidance.

On May 13, 2010, the DHS appealed the termination of proceedings for both respondents. On August 19, 2010, however, the DHS withdrew its appeal regarding the female respondent. Pursuant to 8 C.F.R. § 1003.4 (2011), there is nothing now pending before the Board regarding that respondent. Her record will therefore be returned to the Immigration Judge without further action. Accordingly, we will address the DHS's appeal from the termination of proceedings in the male respondent's case and the Immigration Judge's denial of his asylum application.

## II.  ANALYSIS

### A.  Termination of Proceedings

The regulation at issue in this case provides in pertinent part as follows:

> Except in the case of an alien subject to the expedited removal provisions of section 235(b)(1)(A) of the Act, *an alien arrested without warrant and placed in formal proceedings* under section 238 or 240 of the Act *will be advised* of the reasons for his or her arrest and the right to be represented at no expense to the Government. . . .  The officer will also advise the alien that any statement made may be used against him or her in a subsequent proceeding.

8 C.F.R. § 287.3(c) (emphasis added).

The DHS argues that under the holding in *Samayoa-Martinez v. Holder*, 558 F.3d at 901-02, the respondent's statement during interrogation that he knowingly used his son's United States birth certificate to try to smuggle his nephew into the country is admissible because 8 C.F.R. § 287.3(c) requires notice of the alien's procedural rights only after a Notice to Appear has been filed.

The respondent, relying on a brief previously submitted to the Immigration Judge, argues that his case is factually similar to *Rodriguez-Echeverria*. In particular, the respondent asserts that, like the alien in that case, his liberty

was restricted when he was detained at the border and that he should have been advised of his rights prior to any questioning.

The Form I-213 (Record of Deportable/Inadmissible Alien), the contents of which the respondent does not contest, indicates that he was referred to secondary inspection on December 5, 2004, where he admitted that he knowingly used his son's birth certificate to try to smuggle his nephew into the United States. The documents of record show that the respondent was arrested approximately 8½ hours after applying for admission, but they do not indicate that the officers informed the respondent that he had the right to have an attorney or that his statements could be used against him. Thus, according to the respondent, the Form I-213 should be suppressed.

We agree with the DHS. The phrases "arrested without a warrant" and "placed in formal proceedings" in 8 C.F.R. § 287.3(c) describe the subset of aliens who "will" be given advisals. Thus, under the plain language of the regulation, an alien who is arrested without a warrant is not entitled to advisals until he or she is "placed in formal proceedings." We therefore read the current regulation to require the initiation of formal proceedings as a necessary precondition to the mandatory issuance of the advisals.[3] *See Matter of E-L-H-*, 23 I&N Dec. 814, 823 (BIA 2005) (citing *Matter of Artigas*, 23 I&N Dec. 99 (BIA 2001), and stating that under the elemental rules of construction, we apply the plain meaning of regulatory provisions).

As the Ninth Circuit found in *Samayoa-Martinez v. Holder*, 558 F.3d at 902, the history of the regulation supports this conclusion. *See Matter of F-P-R-*, 24 I&N Dec. 681 (BIA 2008) (relying on regulatory history to interpret the meaning of a regulation). In *Matter of Garcia-Flores*, 17 I&N Dec. 325, 326 (BIA 1980), we quoted the 1977 version of 8 C.F.R. § 287.3, which provided in relevant part:

> An alien arrested without warrant of arrest shall be advised of the reason for his arrest and his right to be represented by council [sic] of his own choice, at no expense to the Government. He shall also be adivsed [sic] that any statement he makes may be used against him in a subsequent proceeding and that a decision will be made within 24 hours or less as to whether he will be continued in custody or released on bond or recognizance.

We noted there that this earlier version of 8 C.F.R. § 287.3 was unclear regarding whether the advisal of the right to counsel was required at the onset

---

[3] We ultimately reached the same conclusion in our unpublished decision in *Matter of Rodriguez-Echeverria*. The alien in that case had given the statements she sought to suppress before the Notice to Appear was filed and therefore before the initiation of formal removal proceedings. Moreover, she was given the required advisals upon being served with the Notice to Appear. Consequently, we concluded that her statements were not obtained in violation of 8 C.F.R. § 287.3.

of the interview or only after it was determined that a prima facie case of deportability existed. *Id.* at 327 n.3.

The regulation was amended in 1979 to specify that "[a]fter the examining officer has determined that formal proceedings under section 236, 237, or 242 of the Act, will be instituted, an alien arrested without warrant shall be advised" of his rights. 8 C.F.R. § 287.3 (1980). In 1997, the regulation was amended to its current form to change the timing of the required advisals from the point at which the officer determined that proceedings "will be instituted" to the time when the alien is actually "placed in formal proceedings." *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,390 (Mar. 6, 1997) (codified at 8 C.F.R. § 287.3(c) (1998)).[4]

In this case, the respondent gave his statement to the interviewing immigration officers on December 5, 2004. The Notice to Appear was issued on December 5, 2004, but was not filed until January 13, 2005. Thus, the statement was made before the initiation of formal removal proceedings. Moreover, because the required advisals are contained in the Form I-862, the respondent was advised of his rights when he was served with the Notice to Appear. We therefore conclude that the respondent's statements were not obtained in violation of 8 C.F.R. § 287.3(c) and that the documents containing his statements are admissible in removal proceedings. *Samayoa-Martinez v. Holder*, 558 F.3d at 901-02. We note in this regard that the respondent did not object to the admission of the Form I-213 during his removal proceedings.

We are also unpersuaded by the respondent's argument that his case is factually similar to *Rodriguez-Echeverria*. As we stated previously, the record indicates that the respondent was referred to secondary inspection, where he admitted that he knowingly used his son's birth certificate to try to smuggle his nephew into the United States. Although he was arrested approximately 8½ hours after applying for admission, this is far different from the situation of the alien in *Rodriguez-Echeverria*. In that case, the alien had been arrested 16 hours before she gave her statement, during which time she "was placed in a locked room overnight and made to remove her shoes and belt, actions which undoubtedly 'restrain the freedom of an individual . . . to walk away.'" *Rodriguez-Echeverria v. Mukasey*, 534 F.3d at 1051 (quoting 8 C.F.R. § 287.8(b)).

Furthermore, regardless of whether there are factual similarities, *Rodriguez-Echeverria* does not require immigration officers to give the

---

[4] In *Samayoa-Martinez v. Holder*, 558 F.3d at 902, the Ninth Circuit also concluded that the 1997 revisions to 8 C.F.R. § 287.3 superseded our holding in *Matter of Garcia-Flores*, 17 I&N Dec. 325, that an immigration officer violates 8 C.F.R. § 287.3 when he fails to give an alien the advisals after the alien is arrested.

pertinent advisals before the initiation of formal immigration proceedings. Rather, the Ninth Circuit held only that the general provisions for disposition of cases of aliens arrested without warrant under 8 C.F.R. § 287.3 applied because the alien's overnight detention at the border was a warrantless arrest.[5] Importantly, however, the Ninth Circuit remanded the case to the Board to decide in the first instance whether 8 C.F.R. § 287.3 requires that advisals be given before an immigration officer interrogates an alien. We conclude that the regulation only requires immigration officers to advise the alien of his or her rights after the alien is placed in formal proceedings by the filing of a Notice to Appear.

The Immigration Judge determined in his March 2, 2007, decision that the Form I-213 clearly established the respondent's inadmissibility on the alien smuggling charge. We agree. For the reasons stated above, we conclude that the proceedings against the respondent were incorrectly terminated on April 14, 2010. The DHS's appeal will therefore be sustained.

## B. Asylum

Because we previously vacated our November 30, 2007, decision summarily affirming the Immigration Judge's denial of relief and reinstated the respondent's appeal, we now address his challenge to the Immigration Judge's March 2, 2007, determination that he did not sufficiently demonstrate past persecution or a nexus between the harm experienced and a protected ground.[6] In this regard, we note that the Immigration Judge made the following findings of fact concerning the relevant aspects of the respondent's asylum claim. Except with respect to the issue of the alleged persecutors' motivation, addressed below, the respondent does not assert that the Immigration Judge's factual findings are clearly erroneous. Nor do we discern any such error. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2011).

During the 1960s, the respondent's father was a member of the judicial police in Guatemala. The respondent's father was aware of, and was set to disclose, the problem of public corruption. In 1966, the respondent's father

---

[5] We also note that mere referral to secondary inspection does not constitute an arrest. For example, the Ninth Circuit has stated that "[d]etention and questioning during routine searches at the border are considered reasonable within the meaning of the Fourth Amendment." *United States v. Zaragoza*, 295 F.3d 1025, 1027 (9th Cir. 2002) (citing *United States v. Espericueta-Reyes*, 631 F.2d 616, 622 (9th Cir.1980), and *United States v. Montoya de Hernandez*, 473 U.S. 531, 539-40 (1985)).

[6] The respondent's application was initially filed before May 11, 2005, and is therefore not governed by the provisions of the REAL ID Act of 2005, Division B of Pub. L. No. 109-13, 119 Stat. 302. *See Matter of S-B-*, 24 I&N Dec. 42, 45 (BIA 2006).

and an aunt were shot to death as they were walking in the street. The respondent believed that the Guatemalan Government was responsible for the shooting because in the days prior to the incident, the family saw a military vehicle roaming the area around the family's residence.

The respondent entered a Government military academy as a cadet in the 1980s. Shortly after enrolling, he started to receive notes in his personal belongings signed by the Guerilla Army of the Poor ("EGP") asking for information about the location of keys to an arms storage warehouse. The notes threatened harm to the respondent and his family if he did not collaborate with the EGP. The respondent agreed to cooperate, but stopped after 1½ years because he realized that the EGP was opposed to the Government. After he stopped cooperating, the EGP delivered more aggressive notes to his home threatening harm to him and his family.

In 1985, the respondent withdrew from the military academy and moved in with his mother. The threatening notes continued. To protect his mother from harm, the respondent decided to move in with his then fiancée's family in 1988. That year he learned that his mother had been killed by a blow to her head and that her home had been burned down. The respondent believed that the EGP was responsible for his mother's death. Notes discovered at the scene of the fire warned that the same would happen to other family members. The respondent then left Guatemala.

The respondent argues that the death of his father in 1966 by Government agents, the threats to the respondent by the EGP guerilla group, and the killing of his mother in 1988, considered cumulatively, amount to past persecution. He also asserts that the EGP guerilla group interpreted his decision to stop cooperating with them as a political act, which created a nexus for purposes of the Act.

We find no reason to disturb the Immigration Judge's ruling. First, even if the Government killed the respondent's father in 1966 to keep him from speaking out against its corruption, the record does not indicate that the Government carried a vendetta against the respondent or his family members. In fact, there is no indication that the Guatemalan Government threatened or harmed the respondent or his family. We are not persuaded that the father's death in 1966 warrants a determination of past persecution or a well-founded fear of persecution under the Act with respect to the respondent.

Second, the record does not indicate that the EGP imputed a political opinion to the respondent or threatened him because he was following in his father's footsteps by enrolling in a Government military school. The record shows that the EGP initially left threatening notes for the respondent in his belongings at military school to get information regarding the location of Government arms. The respondent initially agreed to cooperate with the EGP guerilla group and did so for 1½ years. When he decided to stop cooperating, the EGP resumed their threats by leaving threatening notes at his

house. The notes, which were sometimes anonymous and sometimes "signed by the EGP," indicated that the respondent should be "fighting for the poor" instead of "helping and cooperating with the government." However, the content of the notes is not sufficient to substantiate the respondent's assertion that the EGP's threats were motivated, even in part, by an actual or imputed political opinion.

We emphasize that a "persecutor's actual motive is a matter of fact to be determined by the Immigration Judge and reviewed by us for clear error." *Matter of N-M-*, 25 I&N Dec. 526, 532 (BIA 2011). As the Immigration Judge found, the resumption of the threats seems to indicate that the EGP was angered by the respondent's decision to stop helping them, but it does not sufficiently support the respondent's claim that the EGP interpreted his decision not to help them as a pro-Government political stance. In this regard, we note that the respondent did not claim to have spoken out against the EGP.

We acknowledge that the respondent's mother was apparently killed by a blow to the head and that her home was burned down. We also acknowledge that a note discovered after her death referenced her killing and intimated that the respondent would suffer the same fate. The respondent's mother's death was tragic and horrifying. Nonetheless, based on the record before us, the threatening notes appear to relate to the respondent's decision not to cooperate with the EGP rather than being on account of an actual or imputed political opinion. Thus, we find no clear error in the Immigration Judge's finding that the respondent did not demonstrate that the threats of harm were motivated by a protected ground. *See INS v. Elias-Zacarias*, 502 U.S. 478 (1992).[7]

For these reasons, we conclude that the respondent did not meet his burden of proof to establish his eligibility for asylum.[8] It follows that the respondent also failed to meet the higher burden for withholding of removal under section 241(b)(3) of the Act.

---

[7] In light of our conclusion, we need not address the respondent's argument that the Immigration Judge erred in denying his request for a grant of humanitarian asylum. We also need not decide whether the Immigration Judge properly denied asylum in the exercise of discretion.

[8] We note that the Immigration Judge improperly stated that the facts did not "compel" a finding of past or future persecution. Whether the facts of record *compel* a particular outcome is an issue for the courts of appeals to decide in their review of Board decisions. *See, e.g.*, *Prasad v. INS*, 47 F.3d 336, 338-39 (9th Cir. 1995) (explaining the standard of appellate review of Board decisions as set forth by the Supreme Court in *INS v. Elias-Zacarias*, 502 U.S. at 479, 481, 483-84).

## III.  CONCLUSION

Under 8 C.F.R. § 287.3(c), an alien who is arrested without a warrant must be "placed in formal proceedings" by the filing of a Notice to Appear before he is entitled to be advised that he has a right to counsel and that any statements made during interrogation can subsequently be used against him. Consequently, any statements made prior to the initiation of formal proceedings are not obtained in violation of 8 C.F.R. § 287.3(c), and the fact that no advisals were given at that time does not render the documents containing those statements inadmissible in removal proceedings.

The respondent's statements were made before the initiation of formal removal proceedings and were therefore not obtained in violation of 8 C.F.R. § 287.3(c).  Consequently, in the decision on March 2, 2007, the Immigration Judge properly determined that the Form I-213 containing the respondent's statements was admissible and established his removability.  Because the proceedings against the respondent were incorrectly terminated in the April 14, 2010, decision, the DHS's appeal will be sustained, the decision of the Immigration Judge will be vacated, and the proceedings will be reinstated. Furthermore, the respondent's appeal from the denial of his applications for relief will be dismissed, and he will be ordered removed from the United States.

**ORDER:**  The appeal of the Department of Homeland Security from the termination of proceedings in the male respondent's case is sustained, the April 14, 2010, decision of the Immigration Judge is vacated, and the removal proceedings against the male respondent are reinstated.

**FURTHER ORDER:**  The male respondent's appeal from the Immigration Judge's March 2, 2007, denial of relief is dismissed, and he is ordered removed from the United States to Guatemala pursuant to the order of removal issued on that date.

**FURTHER ORDER:**  The record of the female respondent is returned to the Immigration Judge without further action.