**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

JUN 16 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RODOLFO ARTEAGA-GODINEZ, | No.   12-70882 |
| Petitioner, | Agency No. A044-544-251 |
| v. | **ORDER and MEMORANDUM** * |
| JEFFERSON B. SESSIONS III, Attorney General, | |
| Respondent. | |

| | |
|---|---|
| BRENDA TORRES-PONCE, | No.   12-70981 |
| Petitioner, | Agency No. A077-321-968 |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 12, 2017**

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Government's unopposed motion to consolidate these two appeals,
appearing at docket number 30 in case number 12-70882 and docket number 42 in

Before: PREGERSON, TALLMAN, and BEA, Circuit Judges.

Rodolfo Arteaga–Godinez ("Arteaga") and his wife, Brenda Torres–Ponce ("Torres"), are Mexican nationals and lawful permanent residents in the United States. On July 6, 2006, Arteaga and Torres attempted to enter the United States with a third Mexican national, Maria Olicema–Hernandez ("Olicema"), who was not a lawful permanent resident but who presented Torres's mother's lawful permanent resident card to immigration agents. The agents determined that the card did not belong to Olicema and arrested her, Arteaga, and Torres. Arteaga and Torres were later charged with removability under 8 U.S.C. § 1182(a)(6)(E)(i) for "knowingly . . . assist[ing] . . . [an]other alien to enter . . . the United States in violation of law."

Before an immigration judge ("IJ"), Arteaga conceded his removability and petitioned for cancellation of removal under 8 U.S.C. § 1229b(a).[1] The IJ concluded that Arteaga met the requirements for relief under § 1229b(a), but the IJ nonetheless

case number 12-70981, is **GRANTED**. The panel unanimously finds these cases suitable for decision without oral argument. Fed. R. App. P. 34(a)(2). These cases are ordered submitted as of June 12, 2017.

[1] Section 1229b(a) provides that "[t]he Attorney General *may* cancel removal in the case of an alien who," *inter alia*, "has been . . . lawfully admitted [to the United States] for permanent residence for not less than 5 years" and "has resided in the United States continuously for 7 years." (emphasis added)

2

denied Arteaga's petition "as a matter of discretion." Arteaga appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and the BIA affirmed.

Arteaga now petitions for review of the BIA's decision affirming the IJ's denial of his application for cancellation of removal. He also petitions for review of the BIA's denial of his motion to remand his case for reconsideration in light of our decision in *de Rodriguez–Echeverria v. Mukasey*, 534 F.3d 1047 (9th Cir. 2008). We dismiss Arteaga's petition for lack of jurisdiction in part, and we deny his petition in part.

Before a different IJ, Torres contested her removability under 8 U.S.C. § 1182(a)(6)(E)(i), and filed two motions to terminate her removal proceedings. The IJ denied both motions and ordered Torres removed to Mexico, and the BIA affirmed the IJ's decision and order. In a separate appeal, Torres petitions for review of the BIA's decision affirming the IJ's decision and removal order in her case. We deny Torres's petition for review.

## I.      Arteaga's Petition for Review

1.      We lack jurisdiction to review the BIA's decision in Arteaga's case insofar as it affirms the denial of Arteaga's application for cancellation of removal under 8 U.S.C. § 1229b(a). *See* 8 U.S.C. § 1252(a)(2)(B) ("[N]o court shall have jurisdiction to review [] any judgment regarding the granting of relief under . . . [8

3

U.S.C. §] 1229b."). In reviewing such a decision, we have jurisdiction to decide only "constitutional claims or questions of law." *Id.* § 1252(a)(2)(D).

The BIA did not commit legal error in affirming the IJ's denial of Arteaga's application. First, the IJ's adverse determination as to Arteaga's credibility was not based on "trivial inconsistencies that under the total circumstances have no bearing on [Arteaga's] veracity." *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010). When he was first arrested, Arteaga told immigration agents that his wife had planned the July 6, 2006 smuggling attempt and had solicited his help. Then, before the IJ, Arteaga testified that *he* had planned the smuggling attempt as a favor to Olicema's brother, who was a coworker of his. Far from being "utterly trivial," *id.* at 1043, the IJ reasonably concluded that this inconsistency demonstrated that Arteaga was "willing to . . . manipulate the truth in order to obtain a perceived advantage for his wife's case." The IJ also reasonably determined that the inconsistency undermined Arteaga's credibility with regard to certain claims otherwise favoring cancellation of removal—such as his son's alleged asthma and his mother's alleged limited mobility—which were supported only by Arteaga's own testimony.

Nor did the IJ fail to "provide a specific and cogent reason for rejecting" Arteaga's explanation for the inconsistencies between his testimony and his prior statements to immigration agents. *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir.

4

2011). Arteaga testified that Torres had initially told him to "blame everything on [her]," and that he had done so in his interview with immigration agents. Before the IJ, however, Arteaga stated that "it was wrong" to blame his wife when in fact "[he] was the one who did everything," and so he gave the true version of events in his testimony.

The IJ provided a "cogent reason" for rejecting this explanation: Arteaga claimed that Torres had told him the fabricated story that they both later told immigration agents "while they were both detained in a holding cell with many other people," seated ten to twelve feet from one another, during brief intervals when they "pass[ed] the[ir] child back and forth between [them] to make the child stop crying." The IJ found it "very difficult to believe that somebody would be able to transmit a story so rich in detail and be able to later on narrate it with all the details if it was told in such a manner." Instead, the IJ thought it more likely that Arteaga was "trying to protect his wife," who was "not eligible for cancellation" under § 1229b and who was "claiming that . . . she was not culpable" for the smuggling attempt.

**2.** The BIA also properly denied Arteaga's motion to remand. Arteaga argues that the statements he made to immigration agents after his arrest were inadmissible in his immigration proceedings because he was never "advised of . . . [his] right to be represented" or warned that "any statement made may be used against him . . . in a subsequent proceeding," as required by 8 C.F.R. § 287.3(c). *See*

5

*id.* (requiring immigration agents to notify an alien of these procedural rights after the alien has been "arrested without warrant and placed in formal [removal] proceedings"). Arteaga's motion relied on our decision in *de Rodriguez–Echeverria*, in which we held that an alien is "arrested" within the meaning of section 287.3(c) when his "freedom . . . to walk away" is "restrained." 534 F.3d at 1051. Because *de Rodriguez–Echeverria* was decided after Arteaga's immigration proceedings concluded, Arteaga argues that the BIA should have remanded his case to the IJ for further consideration. We review the BIA's denial of a motion to remand for abuse of discretion. *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005).

The BIA did not abuse its discretion by denying Arteaga's motion to remand. Immigration agents questioned Arteaga after he was "arrested without warrant," but *before* he was served with a Notice to Appear ("NTA") for removal proceedings. Thus, regardless whether Arteaga was "arrested" within the meaning of section 287.3(c) at the time of questioning, Arteaga had not yet been "placed in formal proceedings," and the agents' obligation to notify Arteaga of his rights under section 287.3(c) had not yet attached. *See Samayoa–Martinez v. Holder*, 558 F.3d 897, 901 (9th Cir. 2009) ("Formal removal proceedings do not commence until [immigration agents] ha[ve] filed an NTA in the immigration court.").

## II. Torres's Petition for Review

Torres urges three grounds for granting her petition for review. First, like Arteaga, Torres argues that her statements to immigration agents were inadmissible in her removal proceedings because they were taken in violation of 8 C.F.R. § 287.3(c). Second, she claims that substantial evidence did not support the IJ's determination that she "knowingly" participated in the July 6, 2006 smuggling attempt. Finally, she argues that she was denied due process when the government failed to make "reasonable efforts" to make the immigration agents who interviewed her available for cross-examination in her removal proceedings.

"Where, as here, the BIA has reviewed the IJ's decision and incorporated portions of it as its own, we treat the incorporated parts of the IJ's decision as the BIA's." *Molina–Estrada v. I.N.S.*, 293 F.3d 1089, 1093 (9th Cir. 2002). We review for "substantial evidence" the BIA's and IJ's "[f]indings of fact, such as whether an individual engaged in alien smuggling." *Gonzaga–Ortega v. Holder*, 736 F.3d 795, 800 (9th Cir. 2013). Legal questions are reviewed de novo. *Id.*

1. Torres's argument that she was denied her procedural rights under 8 C.F.R. § 287.3(c) fails for the same reason as Arteaga's: An alien's rights under that section do not attach until the alien has been "arrested without a warrant *and placed in formal [removal] proceedings.*" *Id.* (emphasis added). Because Torres was interviewed on July 6, 2006, and her NTA was not filed until four days later,

7

section 287.3(c) did not apply to her at the time of her interview. *See Samayoa–Martinez*, 558 F.3d at 901.

**2.** Substantial evidence supported the IJ's conclusion that Torres knew of (and in fact orchestrated) the July 6, 2006 smuggling attempt. This evidence included Torres's statements to immigration agents in which she stated that "she made the arrangements to smuggle Olicema into the United States" and that "she acquired her mother's resident alien card in order to provide it to Olicema to use it to enter the United States." Indeed, Torres does not dispute that her statements support the IJ's conclusion. Instead, she simply argues that her "entirely plausible" alternative account should have been afforded more weight.[2] Because Torres fails to demonstrate that "any reasonable adjudicator would be compelled to conclude" that, contrary to the IJ's and the BIA's finding, Torres's later story was in fact the true one, 8 U.S.C. § 1252(b)(4)(B), we decline to grant her petition on this second ground.

**3.** Finally, Torres was not denied "a reasonable opportunity to confront the witnesses against . . . her." *Hernandez–Guadarrama v. Ashcroft*, 394 F.3d 674, 681 (9th Cir. 2005) (quoting *Saidane v. I.N.S.*, 129 F.3d 1063, 1065 (9th Cir. 1997)).

---

[2] Though Torres claims that her statements were "coerced," she does not argue that they were obtained in violation of the Fifth Amendment's Due Process Clause. *See Gonzaga–Ortega*, 736 F.3d at 804. Thus, any such argument is waived. *Martinez–Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("Issues raised in a brief that are not supported by argument are deemed abandoned.").

8

The government stated on the record before the IJ that it was willing to "get all of the officers . . . that were involved in the incident to testify" in her removal proceedings. But Torres never actually *called* any of those officers to testify. Thus, Torres was afforded "a reasonable *opportunity*" to cross-examine the officers, *id.* (emphasis added), and her failure to take advantage of that opportunity did not amount to a violation of her statutory or due-process rights.

### III.    Conclusion

Insofar as Arteaga's petition seeks review of the BIA's decision affirming the IJ's denial of his application for cancellation of removal, the petition is **DISMISSED**. Insofar as Arteaga's petition seeks review of the BIA's denial of his motion to remand, it is **DENIED**. Torres's petition for review is **DENIED**.



FILED

JUN 16 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Pregerson, J., dissenting:

I dissent.  I wish to make two points concerning the unfairness of our immigration laws in the case before us.

First, this case reveals the inequity of our court's cramped interpretation of 8 C.F.R. § 287.3(c).  Under that regulation, noncitizens arrested without warrant by an immigration officer are required to receive *Miranda*-like advisals.  However, our court has held that the right to receive those advisals attaches only after a Notice to Appear has been filed in an immigration court.  *See Samayoa-Martinez v. Holder*, 558 F.3d 897, 901 (9th Cir. 2009).  This rule was brought to bear on petitioners Rodolfo Arteaga-Godinez and Brenda Torres-Ponce, as they were detained and interrogated without advisals several days before the government filed a Notice to Appear.  The statements obtained during those interrogations were then used against the petitioners in their removal proceedings.

In a case like this, the initial interrogation—which usually occurs before the government has filed a Notice to Appear—is often the *only* interrogation.  If a detainee is not read his or her rights before that interrogation, the *Miranda*-like advisals from § 287.3(c) are rendered meaningless.  After all, what is the use of warning a person that "any statement made may be used against him or her" when the government has already conducted its interrogation, filed a Notice to Appear,

1

and often has no need to obtain any further incriminating statements?  How can courts defend a practice that purports to offer noncitizens an important procedural right, yet only does so when that right has little, if any, value?

Second, this case is another example of the cruelty with which our immigration laws tear families apart.  Rodolfo came to the United States in 1990 at age 9 and became a lawful permanent resident in 1994.  Brenda came to the United States in 1990 at age 7 and became a lawful permanent resident in 2004.  Rodolfo and Brenda were legally married in September 2001.  At the time of their removal proceedings, the couple had a United States citizen child, and Brenda was pregnant.  Rodolfo has consistently worked in construction and aspires to attend college to become a welder.  Brenda has worked at a medical office and volunteers at her son's school.

Rodolfo and Brenda maintain a close and strong bond with their family in the United States.  Rodolfo's mother, three of his brothers, and one sister are all permanent legal residents of the United States, and he has another sister who is a United States citizen.  Brenda's parents are both lawful permanent residents and her brother is a United States citizen.  If Rodolfo and Brenda are removed, their children will either grow up in the United States without their parents or be compelled by circumstances beyond their control to move to a country they do not know.  I decline to be a party to such an unkind and cruel result.