**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ODILIA DE JESUS VELASQUEZ-ESCOVAR, | No. 10-73714 |
| *Petitioner*, | |
| | Agency No. A088-753-610 |
| v. | |
| ERIC H. HOLDER, JR., Attorney General, | OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 11, 2014[*]
Pasadena, California

Filed September 29, 2014

Before: Barry G. Silverman, Richard C. Tallman,
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Tallman;
Dissent by Judge Rawlinson

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Immigration

The panel granted Odilia de Jesus Velasquez-Escovar's petition for review of the Board of Immigration Appeals' denial of her motion to reopen an in absentia removal order.

The panel held that the BIA abused its discretion in finding that Velasquez was not entitled to notice of her deportation hearing. The panel wrote that aliens are entitled to notice unless they fail to give a current address to the government, or fail to let the government know when they move, and held that Velasquez did neither. The panel held that the BIA arbitrarily discounted Velasquez's unrefuted claim without providing a reason, because the two reasons it provided did not support its decision. The panel held that this court could not affirm the BIA's decision pursuant to 8 C.F.R. § 1003.15(d)(1), which places the burden on an alien to inform the immigration court that the government used the wrong address on a Notice to Appear, because the BIA's decision did not invoke that regulation, and because the NTA itself did not mention § 1003.15(d)(1) or otherwise put Velasquez on notice.

Dissenting, Judge Rawlinson would find that the BIA did not act in an arbitrary or irrational fashion, and that it gave a reasoned explanation for its ruling. Judge Rawlinson would find Velasquez's failure to provide her current address to the agency in writing fatal to her case. Judge Rawlinson would

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

find that § 1003.15(d)(1) should apply to this case. Applying an abuse of discretion standard of review, Judge Rawlinson would find no abuse, and would deny the petition.

## COUNSEL

Alejandro Garcia, Commerce, California, for Petitioner.

Tony West, Assistant Attorney General, Civil Division; Holly M. Smith, Senior Litigation Counsel, Office of Immigration Litigation; Claire L. Workman, Trial Attorney, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION

TALLMAN, Circuit Judge:

At the outset of her removal proceedings, Odilia de Jesus Velasquez-Escovar gave immigration officials her current address in Los Angeles. But those officials did not properly record it. Instead, they recorded another outdated address and then sent Velasquez's hearing notice there. Velasquez never got that notice and, without it, she did not know when to appear for her deportation hearing. Understandably, she failed to appear and was ordered removed in absentia. When she found out about that order, Velasquez moved to reopen. An Immigration Judge denied that motion, and the Board of Immigration Appeals affirmed. In so doing, it abused its discretion. Accordingly, we grant Velasquez's petition for review.

# I

Odilia de Jesus Velasquez-Escovar is Guatemalan. She illegally entered the United States around 1990, settling in Los Angeles. She has four children; two are native-born citizens of the United States. She admits that she remains here unlawfully.

In 2007, Velasquez returned briefly to Guatemala. On her way back to Los Angeles, she was pulled over in Refugio, Texas, by local police. Those officers called federal immigration officials, who met Velasquez at the Calhoun County Jail. There, she admitted her alienage and was transported to the Corpus Christi Border Patrol Station for processing.

Velasquez claims that the Corpus Christi-based immigration officials asked her for her current address. She says that she told them that she and her daughters had just moved to 14001 Vanowen Street, Van Nuys, California. Next, she claims she was asked whether she had ever lived at 11827 Valerio Street in Los Angeles. Petitioner says she told them that she had lived at Valerio Street, but that the Vanowen address was her current one. Velasquez says the agents told her that they found the Valerio address by looking up her "identification number," which she assumes meant the number on her California state identification card.

After hand-serving Velasquez with a Notice to Appear (NTA), immigration authorities released her. The NTA charged her as removable and ordered her to appear in Los Angeles for an immigration hearing at a date and time "to be set" later. The NTA mistakenly listed the Valerio Street address as Velasquez's current address. We do not know

whether Velasquez noticed the error, but we do know that she never brought it to the government's attention.

NTA in hand, Velasquez returned to California. Since her return, she has lived at the Vanowen address. She spent roughly six months regularly visiting an attorney's office to check on the status of her case. Eventually she gave up. Having received no further word from the government, she assumed her case had been closed. She was wrong. Fifteen months after Velasquez stopped visiting the lawyer—which was almost two years after she was arrested in Texas—the immigration court mailed a notice setting a date and time for Velasquez to appear. The notice went to Velasquez's old address on Valerio Street, not her current address on Vanowen. Velasquez did not receive the notice, did not appear, and was ordered removed in absentia. A copy of the removal order was sent to the Valerio address and returned as undeliverable.

Roughly six months later, Velasquez was detained by Immigration and Customs Enforcement. (The record does not say why.) While detained, she learned of the outstanding removal order and immediately filed a motion to reopen. She argued that she should not have lost her right to a hearing because the government improperly recorded—and then sent notice to—an old address, rather than the current one she claims to have given them. The government argued that it was her burden to tell it that it had the wrong address because she should have noticed the error on the NTA. The IJ agreed with the government and denied the motion to reopen. The BIA dismissed Velasquez's appeal of that denial. Velasquez now petitions for review.

**II**

We have jurisdiction under 8 U.S.C. § 1252(a)(1) (2012). Our review includes the "validity of the notice provided to the alien" and "the reasons for the alien's absence" from the hearing.  8 U.S.C. § 1229a(b)(5)(D) (2012).

**III**

We review the denial of a motion to reopen for abuse of discretion.  *Hamazaspyan v. Holder*, 590 F.3d 744, 747 (9th Cir. 2009). Here, the BIA reviewed the IJ's decision de novo, so we review only the BIA's decision. *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006).  The BIA abuses its discretion when it acts "arbitrarily, irrationally, or contrary to the law." *Lainez-Ortiz v. INS*, 96 F.3d 393, 395 (9th Cir. 1996).

**IV**

There is only one question here: Did the BIA abuse its discretion when it decided that Velasquez was not entitled to notice under the immigration statutes?  The answer is "yes" because neither of the BIA's two reasons support its decision. It is arbitrary to discount Petitioner's unrefuted claim without providing a reason.

**A**

The immigration statutes governing notice do three things:

(1) They create a right to notice;

    (2)  They create an exception to that right for aliens who do not fulfill two simple obligations; and

    (3)  They describe those obligations.

Two provisions create the right to notice. First, 8 U.S.C. § 1229(a)(1) requires that "In removal proceedings . . . written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien (or, if personal service is not practicable, through service by mail . . . ) . . . specifying . . . [t]he time and place at which the proceedings will be held." Sometimes the NTA leaves the hearing time "to be set," as it did here. Section 1229(a)(2)(A) covers those cases and cases where hearings are continued: "[I]n the case of any change or postponement in time and place . . . a written notice shall be given in person to the alien (or, if personal service is not practicable, through service by mail . . . )." Between them, these two provisions create, at a minimum, a right to "written notice" "serv[ed] by mail." 8 U.S.C. § 1229(a)(2)(A).

    That right is "subject to subparagraph (B)." *Id.* Subparagraph (B) creates the exception: "[A] written notice shall not be required . . . if the alien has failed to provide the address required under paragraph [28 U.S.C. § 1229(a)](1)(F)." 28 U.S.C. § 1229(a)(2)(B); *see also* 28 U.S.C. § 1229a(b)(5)(B) (identical exception in provision dealing specifically with absentia proceedings). The "address required" language refers to the section that describes the two simple obligations that aliens must perform to retain their right to notice.

Those two obligations are:

> (1) "[T]he alien must immediately [upon service of the NTA] provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting [the removal] proceeding," and

> (2) "[The alien] must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number."

28 U.S.C. § 1229(a)(1)(F)(i)–(ii). These are the only two address-related obligations that the statutes impose on aliens. (A regulation, as we will see, may add a third.)

Put simply, aliens are entitled to notice unless they fail to give a current address to the government or fail to let the government know when they move. Here, Velasquez did neither. She claims that she gave the Corpus Christi-based immigration officials her current address on Vanowen Street and that she never moved. Nothing in the record refutes either claim. Accordingly, the statutes entitled her to notice.

## B

The BIA's contrary decision was an abuse of discretion. The BIA decided that Velasquez was not entitled to notice for two reasons. First, the BIA concluded that Velasquez was not entitled to notice because she failed to provide the government with her address: "the respondent was informed

of her obligation to inform the Immigration Court of her mailing address. She did not do so. The respondent therefore is not entitled to receive actual notice of her hearing." Just before it wrote that Velasquez "did not" tell the government her address, the BIA wrote that Velasquez "allegedly informed the DHS that she was living with her daughters at 14001 Vanowen Street."

In other words, the BIA concluded that Velasquez "did not" provide her current address after acknowledging that she claims she did. This is arbitrary because the BIA gives no reason for discounting Velasquez's claim. And there is no reason it could give. The claim is facially plausible and supported by Velasquez's declaration. There is no contrary evidence, and no adverse credibility finding. So far as we can tell, the BIA disbelieved Velasquez for no reason. It can not do that.

The BIA's second reason is no better. The BIA wrote that "even assuming [Velasquez] told the officer that [Valerio] was her prior address and that officer misunderstood [Valerio] to be her current address, it would not change the result of this case." It went on: "[Velasquez] was on notice through the address on the NTA and the advisal included with it that she had a duty to notify the Immigration Court of her current address. In other words, it was incumbent on [Velasquez] to ensure that a correct address was supplied . . . . [S]he did not do so." This reason is as inconsistent as the last. The BIA says that "it was incumbent on [Velasquez] to ensure that a correct address was supplied" and then concludes that "she did not do so." But Velasquez's unrefuted claim is that she did supply the correct address—Vanowen Street.

Possibly, the BIA meant to say that Velasquez was required to "ensure that the correct address was *written down*" instead of that she was required to "ensure that the correct address was *supplied*." This too would be an abuse of discretion because it takes the NTA advisal's meaning and stretches it too far. That advisal says only that "You are required to provide the DHS, in writing, with your full mailing address and telephone number." Nothing in the advisal mentions or fairly implies any continuing duty, much less a continuing duty to correct the government. Once the alien provides an address and phone number, the alien's work is done. If the BIA meant to say otherwise, then it abused its discretion.

## C

Rather than defend the BIA's reasoning, the government relies on three alternate grounds to defend the result below. First, the government points to 8 C.F.R. § 1003.15(d)(1). This regulation provides that "if the address on the . . . Notice to Appear is incorrect, the alien must provide to the Immigration Court where the charging document has been filed, within five days of service of that document, a written notice of an address and telephone number at which the alien can be contacted." 8 C.F.R. § 1003.15(d)(1). In effect, this regulation adds a third obligation to the two mentioned in the statutes. In other words, the statutes require aliens to (1) provide an address and (2) tell the government if they move, and the regulation demands that they also (3) tell the government if it puts the wrong address on the NTA.

We agree with the government that the regulation fits the situation here. Velasquez admits receiving the NTA, which bears an incorrect address. The regulation—and common

sense—put the burden on the alien to inform the immigration court that the government got it wrong. But because the BIA's decision failed to invoke § 1003.15(d)(1), either by its name or by its logic, this court cannot rely on it to affirm. *E.g., Navas v. I.N.S.*, 217 F.3d 646, 658 n.16 (9th Cir. 2000) (holding that we cannot affirm the BIA "on a ground upon which it did not rely").[1]

Moreover, the NTA itself never mentions § 1003.15(d)(1) or otherwise puts aliens on notice that an NTA with an incorrect address is their problem. Rather, the NTA warns aliens that they will be removed in absentia if they fail to appear and that the "government shall not be required to provide [them] with written notice" if they fail to provide a current address or fail to notify the government when they move.[2] This tracks the statutes but not the regulation. It

---

[1] The dissent argues that the Petitioner had an obligation to provide her address *in writing* to the agency. *Dissenting Opinion*, pp. 15–16. However, neither the BIA nor the Immigration Judge raised this issue, therefore, similar to the regulatory invocation of § 1003.15(d)(1), this Court cannot affirm the BIA on grounds upon which it did not rely. Furthermore, the government's brief did not raise the written address issue, thus it is waived. *See Sola v. Holder*, 720 F.3d 1134 (9th Cir. 2013).

[2] The whole warning reads:

> **Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the

never says anything like "if the address listed on the front of this form is incorrect, it is your responsibility to notify the immigration court."

And this omission may preclude the government from relying on the regulation in cases like this. According to the BIA, aliens cannot be held to the two statutory obligations until the government gives them notice of those obligations by serving the NTA. *In re G-Y-R-*, 23 I. & N. Dec. 181, 184–86 (BIA 2001) (en banc). In other words: no notice, no obligation.[3] By that logic, even aliens who have been served an NTA cannot be held to the address obligation in § 1003.15(d)(1) because the NTA does not mention it. Thus, even if the BIA had relied on § 1003.15(d)(1) here, the BIA's own precedent would still compel us to reverse.

Next the government relies on dicta in *Hamazaspyan v. Holder*, 590 F.3d 744, 746 n.3 (9th Cir. 2009). There, the immigration court sent a mis-addressed hearing notice to Hamazaspyan and no notice at all to his lawyer. *Hamazaspyan*, 590 F.3d at 745–46. Neither appeared, and Hamazaspyan was ordered removed in absentia. *Id.* The IJ and BIA denied his motion to reopen, but we granted his

---

> Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

[3] The dissent points out a distinction without a difference with respect to the facts in *In re G-Y-R-*. *See Dissenting Opinion*, p.17–18. A defective notice and no notice both amount to no notice.

petition for review, holding "that serving a hearing notice on an alien, but not on the alien's counsel of record, is insufficient . . . ." *Id.* at 749.

The government does not rely on this holding. Rather, it points to a footnote where we rejected Hamazaspyan's alternative argument: "[E]ven if Hamazaspyan provided the government with his correct address, and the government agents incorrectly transcribed what he said, Hamazaspyan would not be entitled to relief because he failed to correct the mistake when it was brought to his, or his counsel of record's, attention." *Id.* at 746 n.3. But the BIA did not rely on *Hamazaspyan*. So, for the same reason that § 1003.15(d)(1) cannot save the government, neither can *Hamazaspyan*. *Navas*, 217 F.3d at 658 n.16.

Finally, the government attempts to win by analogy. It says that this case—where an alien failed to correct her address—is like cases where asylum applicants fail to correct their own false testimony, *Ahir v. Mukasey*, 527 F.3d 912, 918 (9th Cir. 2008), or the false testimony of their witnesses, *Singh v. Holder*, 643 F.3d 1178, 1182–83 (9th Cir. 2011). But—again—the BIA did not rely on this analogy, so we cannot either. *Navas*, 217 F.3d at 658 n.16. Nor would we if we could. The analogy does not work because deception and carelessness are two different things.

## V

Although we hold that Velasquez was entitled to notice, we understand why the IJ, the BIA, and the government pressed the opposite result. What makes that result so attractive is that it would have been so easy for Velasquez to notice the error on the NTA and so easy for her to correct it.

A little diligence and common sense on her part could have avoided this appeal. But neither diligence nor common sense are notice. Notice is notice. And, under the circumstances here, Velasquez was entitled to notice.

**PETITION GRANTED.**

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent. Applying an abuse of discretion standard of review, I would deny the petition.

When ruling on a motion to reopen immigration proceedings, the Board of Immigration Appeals (BIA) abuses its discretion if it acts in an arbitrary or irrational fashion, renders a decision that is contrary to governing law, or neglects to give a reasoned explanation for its decision. *See Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005).

The majority accuses the BIA of "discount[ing] Petitioner's unrefuted claim without providing a reason." *Majority Opinion*, p. 6. Yet, two pages later, the majority articulates two reasons given by the BIA for its decision. *See id.*, p. 8. In any event, there was nothing irrational or arbitrary about placing the burden upon Petitioner of providing written notice of her address to the immigration authorities. Indeed, as the majority acknowledges, there is a regulation that so provides. *See Majority Opinion*, pp. 10 (referencing 8 C.F.R. § 1003.15(d)(1)). Although the majority concludes that the regulation has no place in our analysis of this case, I disagree. In any event, the BIA could not act arbitrarily or irrationally by imposing an obligation

that has been memorialized in a regulation. For the same reason, the decision of the BIA was not contrary to governing law. Finally, the BIA gave a reasoned explanation for its ruling. *Cf. Movsisian*, 395 F.3d at 1098 ("Here the BIA denied Movsisian's motion to reopen stating in toto: 'The respondent's motion to reopen is denied. . . .'").

Nevertheless, the majority determines that the BIA abused its discretion, relying primarily on the Petitioner's assertion that during an interview with Border Patrol agents, she verbally provided a new address to the agents.[1] Rather than sending the NTA to the address verbally provided by Petitioner, the Department of Homeland Security sent the notice to the address that was in the agency files. It is this occurrence that the majority relies upon to support its conclusion that the BIA abused its discretion when it denied Petitioner's motion to reopen.

In my view, the majority's analysis ignores the Petitioner's obligation to provide her current address to the agency *in writing*, and absolved her of the obligation to provide an address in writing upon service of the NTA. These requirements are fatal to Petitioner's case.

As the majority notes, 8 U.S.C. § 1229(a)(1)(F)(i) provides that the alien must, upon service of the NTA "provide (or have provided) the Attorney General with a *written record* of an address . . . at which the alien may be contacted respecting [removal] proceedings . . ." (emphasis

---

[1] Characterizing this interview as "the outset of [Petitioner's] removal proceedings," is somewhat hyperbolic. We all know that removal proceedings commence with the filing of a Notice to Appear (NTA). *See Samayoa-Martinez v. Holder*, 558 F.3d 897, 901–02 (9th Cir. 2009).

added).   The wisdom of requiring a written record of the address is demonstrated by the inconclusive he said-she said nature of the dispute in this case.  It is undisputed that the petitioner failed to provide a written record of the address that she maintains should have been used.

I am also persuaded that when petitioner received the NTA which contained an incorrect address, it was incumbent upon her to notify the agency of her correct address.  As the majority acknowledges, the NTA contains a warning that the alien is "required to provide the DHS, *in writing* with [her] full mailing address and telephone number . . ."  *Majority Opinion*, p. 11 n.2 (emphasis added).  The majority also confirms that 8 C.F.R. § 1003.15(d)(1) provides that if the address on the NTA is incorrect, it is the alien's obligation to provide a correct address.  *See id*., p. 10.  Nevertheless, the majority absolves Petitioner of her obligation for two reasons: 1) the BIA did not rely on the regulation in rendering its decision, and 2) the NTA did not adequately inform Petitioner of her obligation to correct the address.  *See Majority Opinion*, pp. 10–12.

I am not persuaded to join the absolution.  That the BIA did not cite the regulation in its decision does not constitute an abuse of discretion.  Rather, our focus is on whether the decision was contrary to governing law.  *See Movsisian*, 395 F.3d at 1098.[2]  It was not.  The NTA warns that the recipient

---

[2] For the same reason, I disagree with the majority's rejection of the government's citation to the alternative ruling in *Hamazaspyan v. Holder*, 590 F.3d 744, 746 n.3 (9th Cir. 2009).  The majority takes the position that because the BIA did not explicitly quote the governing regulation or case authority, Petitioner's lack of compliance with the regulation must be excused.  However, our review is of the "grounds" upon which the BIA made its decision.  *See Vargas-Hernandez v. Gonzalez*, 497 F.3d 919,

must provide the DHS, in writing, the recipient's mailing address. If the mailing address noted on the NTA is incorrect, the direction to provide the address in writing should resonate even more strongly with the recipient. In addition, I do not agree that the BIA failed to invoke the logic of the regulation in its decision. The BIA decision noted that Petitioner was "on notice through the [invalid] address on the NTA and the advisal included with it that she had a duty to notify the Immigration Court of her *current* address. . . ." (emphasis added). The decision also reasoned that "it was incumbent on [Petitioner] to ensure that a *correct* address was supplied to the Immigration Court after she was personally served with the [NTA] containing the aforementioned advisal. . . ." There would be no reason for the decision to refer to notifying the Immigration Court of a *current* address and to supplying a *correct* address unless the BIA was referring to the non-current and incorrect address on the NTA. Because this reference reflects the requirements of the regulation, there was no abuse of discretion. *See Movsisian*, 395 F.3d at 1098 ) (holding that the BIA abuses its discretion when it acts contrary to the law). Indeed, as the majority concedes, the governing regulation "fits the situation here. . . ." *Majority Opinion*, p. 10. Because the regulation fits, the BIA decision could not be contrary to it, and no abuse of discretion determination can rationally be predicated on that premise.

Finally, I disagree with the majority's reliance on *In re G-Y-R*, 23 I&N Dec. 181 (BIA 2001) (en banc) to absolve Petitioner of her obligation to provide, in writing, her current

921–22 (9th Cir. 2007). And it is unquestioned that the "ground" upon which the BIA based its decision was Petitioner's failure to give the notice as required by law.

address to the agency. That case involved a different circumstance, notably a complete failure to serve the NTA upon the alien. In that circumstance, the BIA ruled that an alien may not be removed *in absentia*

> when the Service mails the [NTA] to the last address it has on file for an alien, but the record reflects that the alien did not receive the [NTA], and the notice of hearing it contains, and therefore has never been notified of the initiation of removal proceedings or the alien's address obligations under . . . the Act. . . .

*Id*. at 192.

In contrast to the facts in *G-Y-R*, it is unquestioned that Petitioner received the NTA and the notice of hearing notifying her of the removal proceedings and of her obligation to notify the agency, in writing, of her current address. *G-Y-R* simply does not support a determination that the BIA abused its discretion in denying Petitioner's motion to reopen.

Because the BIA did not act in an arbitrary or irrational fashion, rule contrary to law, or neglect to give a reasoned explanation for its decision, the denial of the motion to reopen did not constitute an abuse of discretion. *See Movsisian*, 395 F.3d at 1098. I would deny the petition for review.